The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 16, 2020

## 2020COA68

**No. 17CA1399, *People v. Gillis* — Crimes — First Degree Burglary — First Degree Criminal Trespass — Assault in the Third Degree; Criminal Law — Prosecution of Multiple Counts for Same Act — Lesser Included Offenses**

A division of the court of appeals considers whether first degree criminal trespass and third degree assault are lesser included offenses of first degree burglary under the statutory elements test articulated in *Reyna-Abarca v. People*, 2017 CO 15, 390 P.3d 816. Given that the elements of first degree criminal trespass are a subset of the elements of first degree burglary, the division holds that first degree criminal trespass is a lesser included offense of first degree burglary. The division vacates the defendant's conviction for first degree criminal trespass because it merges into his conviction for first degree burglary.

Although third degree assault is a lesser included offense of first degree burglary when the assault is charged as the predicate offense for first degree burglary, the division affirms each of the defendant's convictions because he assaulted the victim twice.

The division also holds that the defendant was not denied his right to counsel and that his appeal of the trial court's denial of his right to a preliminary hearing is moot because a jury found him guilty as charged.

COLORADO COURT OF APPEALS                                    **2020COA68**

Court of Appeals No. 17CA1399
Adams County District Court No. 15CR2485
Honorable Michael A. Cox, Judge
Honorable Patrick T. Murphy, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ian Joseph Gillis,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART
AND VACATED IN PART

Division VII
Opinion by JUDGE LIPINSKY
Fox and Berger, JJ., concur

Announced April 16, 2020

Philip J. Weiser, Attorney General, Jennifer L. Carty, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Taylor J. Hoy, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Ian Joseph Gillis, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree burglary, first degree criminal trespass, and third degree assault. We affirm Gillis's convictions for first degree burglary and third degree assault, but vacate his conviction for first degree criminal trespass. We do not remand for resentencing because the court sentenced Gillis to identical concurrent sentences for each offense.

## I.    Background Facts and Procedural History

### A.    The Underlying Incident

¶ 2    According to E.G., her boyfriend Gillis demanded that she return to her apartment so he could collect belongings he had left there. Later that day, E.G. placed Gillis's belongings outside her apartment and locked the door because she was "freaked out" from their earlier conversation.

¶ 3    Shortly thereafter, Gillis attempted to enter E.G.'s apartment, but was unable to do so because the door was locked. He kicked in the door while E.G. screamed at him to stop from inside her apartment.

¶ 4    Once inside her apartment, Gillis threw E.G. to the floor and smothered her face to stop her from screaming. E.G. ran to her

bedroom when Gillis finally got off her. He followed her, threw her on her bed, climbed on top of her, and smothered her face with a pillow. Eventually, Gillis got off E.G. and told her they would leave her apartment together. After E.G. said she would not leave with him, Gillis dragged her down the hallway toward the front door, causing rug burns on her knees.

¶ 5 At that point, E.G. convinced Gillis to let her use the bathroom. While inside the bathroom, E.G. texted a friend for help. Gillis waited outside the bathroom door and began hitting or kicking it to force E.G. to leave the bathroom. Fearing he would kick down the door, she stepped out of the bathroom. Gillis then began to pull E.G. down the hallway to force her to leave with him. When she struggled, he slammed her against a wall, causing her to hit her head. Gillis next wrapped a towel around E.G.'s neck, used it to pull her into the kitchen, and began to choke her with it.

¶ 6 Shortly thereafter, E.G.'s friend and her friend's boyfriend arrived and yelled at Gillis to leave. Gillis dropped the towel and left the apartment. E.G. then left the apartment and called the police.

¶ 7    Based on the information E.G. gave to the police, the prosecution charged Gillis with (1) first degree burglary; (2) first degree criminal trespass; and (3) second degree assault.

### B.    Gillis's Preliminary Hearings

¶ 8    During Gillis's advisement on January 21, 2016, he informed the court that he planned to hire private counsel.  The court set his preliminary hearing for March 3, 2016 (the March Preliminary Hearing).

¶ 9    Gillis appeared pro se at the March Preliminary Hearing.  He told the court that he still intended to hire private counsel, but that he needed more time to find the money for a retainer to pay an attorney.  He requested another continuance.  The court said that "[w]e'll set it over one time," granted his request, and rescheduled the preliminary hearing for April 14, 2016 (the April Preliminary Hearing).

¶ 10    One day before the April Preliminary Hearing, the prosecution requested a continuance because two of its witnesses were unavailable.  The court did not rule on the prosecution's request that day, however.  At the April Preliminary Hearing, the prosecutor informed the court that Gillis had recently hired counsel.  Gillis did

not object to the prosecutor's representation. The prosecutor then renewed his request for a continuance. The court granted the request, rescheduling the hearing for May 5, 2016 (the May Preliminary Hearing).

¶ 11    Gillis appeared pro se at the May Preliminary Hearing. He requested another continuance so he could apply for representation from the public defender's office. The prosecutor objected to Gillis's request and the court denied the requested continuance. The court found that Gillis had waived his right to a preliminary hearing by appearing at multiple hearings without counsel. Gillis objected to the court's ruling.

¶ 12    The court instructed Gillis to take his application to the public defender's office. Gillis complied, and a public defender entered her appearance as his counsel of record later that day. Gillis's public defender moved for a preliminary hearing, but the record is unclear whether the court ever addressed the motion. Gillis did not move for a preliminary hearing during any subsequent hearings.

### C.    Gillis's Trial

¶ 13    Because Gillis's assault on E.G. occurred over time and because he inflicted distinct injuries on her during the different

4

stages of the assault, the prosecutor argued that Gillis had assaulted E.G. twice. For this reason, the prosecutor charged him separately with first degree burglary, based on the predicate offense of assault, and second degree assault. Gillis did not object at trial to the prosecutor's decision to treat his actions as constituting two assaults.

¶ 14     A jury convicted Gillis of (1) first degree burglary, based on the predicate offense of third degree assault; (2) first degree criminal trespass; and (3) third degree assault. The court sentenced him to four years' probation on each conviction, to be served concurrently, with the condition that he participate in, and abide by the rules and regulations of, a veteran's court program.

## II.     Discussion

¶ 15     Gillis raises two contentions of error. First, he contends that the court erred by finding that he impliedly waived his right to counsel and subsequently waived his right to a preliminary hearing. Second, he asserts that the court erred by failing to merge his convictions for first degree criminal trespass and third degree assault into his conviction for first degree burglary. We agree that Gillis's conviction for first degree criminal trespass merges into his

conviction for first degree burglary but disagree with his remaining arguments.

### A. The Trial Court Found Only that Gillis Waived His Right to a Preliminary Hearing

¶ 16    The parties disagree how we should analyze Gillis's first contention of error.  Contending that the court violated his right to counsel, Gillis asserts that the court erred in finding that he impliedly waived his right to counsel by requesting multiple continuances of his preliminary hearing and appearing without counsel at any of the rescheduled hearings.  Gillis argues that this finding impaired his ability to construct, prepare, and present a defense at trial.

¶ 17    According to the People, however, the court found that Gillis's actions resulted in a waiver of his right to a preliminary hearing, rather than a waiver of his right to counsel.  The People assert that the trial court did not hold that Gillis waived his right to counsel, particularly as it instructed him to apply to the public defender's office to obtain counsel.

¶ 18    Based on the record, we agree with the People that the court did not deprive Gillis of his right to counsel.  Gillis appeared pro se

6

at the March Preliminary Hearing, the April Preliminary Hearing, and the May Preliminary Hearing only because he failed to retain private counsel after informing the court of his intention to do so. At the May Preliminary Hearing, he first disclosed that he planned to ask the public defender's office to represent him. After stating that Gillis was "playing games," the court found that he had waived his right to a preliminary hearing. It did not find that he waived his right to counsel. Instead, the court asked Gillis why he had not retained private counsel, rejected his argument that he lacked sufficient funds to hire a lawyer because he qualified for a public defender, and instructed him to take his application "over to the Public Defender's Office right now" because "[t]hat way you'll have an attorney." Gillis then submitted his application to the public defender's office. A public defender entered her appearance as his counsel of record and represented him throughout the case.

¶ 19    Thus, Gillis was not deprived of his right to counsel. We next consider his contention that the court erred in denying him the right to a preliminary hearing.

## B. Gillis's Contention that the Court Denied him a Preliminary Hearing Is Moot

### 1. Legal Authority

¶ 20 Section 16-5-301(1)(a), C.R.S. 2019, provides that "[e]very person accused of a class 1, 2, or 3 felony . . . has the right to demand and receive a preliminary hearing . . . ." *See* Crim. P. 5(a)(4). First degree burglary is a class 3 felony. § 18-4-202(2), C.R.S. 2019. Second degree assault is a class 3 felony if the victim "suffered serious bodily injury during the commission" of a burglary. § 18-3-203(2)(b.5), C.R.S. 2019.

¶ 21 "The purpose of a preliminary hearing is to 'screen out cases in which prosecution is unwarranted by allowing an impartial judge to determine whether there is probable cause to believe that the crime charged may have been committed by the defendant.'" *People v. Nichelson*, 219 P.3d 1064, 1066-67 (Colo. 2009) (quoting *Rex v. Sullivan*, 194 Colo. 568, 571, 575 P.2d 408, 410 (1978)).

¶ 22 But the right to a preliminary hearing is not absolute. *People v. Moody*, 630 P.2d 74, 76 (Colo. 1981); *see* Crim. P. 5(a)(4)(I) (providing that the defendant or prosecution must request a

8

preliminary hearing within seven days of the defendant being brought before the county court).

¶ 23    A defendant who seeks appellate review of a court's denial of his or her request for a preliminary hearing must do so before trial because, if the defendant is convicted at trial, the alleged error in denying the preliminary hearing becomes moot. *Nichelson*, 219 P.3d at 1067; *see Kuypers v. Dist. Court*, 188 Colo. 332, 335, 534 P.2d 1204, 1206 (1975) ("Resolution of [probable cause] questions must be made prior to trial in order to avoid the anomalous situation where a defendant may be found guilty at trial, and then attempt to have the conviction reversed for a preliminary hearing on probable cause."). The proper procedure for seeking such review is a C.A.R. 21 petition to the supreme court. *Nichelson*, 219 P.3d at 1066-67; *Kuypers*, 188 Colo. at 335, 534 P.2d at 1206.

### 2.    Analysis

¶ 24    We do not reach the merits of Gillis's contention that the court denied his right to a preliminary hearing because we conclude the issue is moot. Although Gillis repeatedly requested a preliminary hearing and objected to the court's finding that he had waived his right to one, he did not seek relief under Rule 21 before his case

proceeded to trial. Thus, he failed to pursue the only remedy available to him. *See Nichelson*, 219 P.3d at 1066-67. It is too late for him to challenge whether there was probable cause to support the first degree burglary charge after a jury found beyond a reasonable doubt that he committed the offense. Nor can he challenge whether there was probable cause to support the second degree assault charge because a jury found beyond a reasonable doubt that he also committed the lesser included charge of third degree assault. *See id.*; *Kuypers*, 188 Colo. at 335, 534 P.2d at 1206; *see also Blue v. United States*, 342 F.2d 894, 901 (D.C. Cir. 1964) ("Where, as here, the accused has been found guilty of those charges in a full-scale trial that we have otherwise found to be free of error, the chances that he could persuade a magistrate that no probable cause exists . . . are perhaps not ungenerously to be characterized as speculative.").

C. The Court Erred When It Did Not Merge Gillis's Conviction for First Degree Criminal Trespass, but Not His Conviction for Third Degree Assault, Into His Conviction for First Degree Burglary

¶ 25 Gillis argues that the elements of first degree burglary encompass the elements of first degree criminal trespass and third

10

degree assault. For this reason, he contends that the court erred by sua sponte failing to merge his convictions for first degree criminal trespass and third degree assault into his conviction for first degree burglary. The People concede, and we agree, that his conviction for first degree criminal trespass merges with his conviction for first degree burglary. Thus, we vacate his conviction for first degree criminal trespass. We disagree, however, that Gillis's conviction for third degree assault merges because his multiple assaults against E.G support his convictions of the two separate offenses.

1. Standard of Review

¶ 26 "Whether convictions for different offenses merge is a question of law that we review de novo." *Page v. People*, 2017 CO 88, ¶ 6, 402 P.3d 468, 469. If a defendant fails to preserve a double jeopardy claim based on merger, we review for plain error. *Reyna-Abarca v. People*, 2017 CO 15, ¶ 46, 390 P.3d 816, 823. "Errors that so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction constitute plain error." *People v. Vigil*, 127 P.3d 916, 929-30 (Colo. 2006). "In the double jeopardy context, the answer [to whether

plain error occurred] would invariably be 'yes'" if the defendant was convicted multiple times for the same conduct. *People v. Tillery*, 231 P.3d 36, 48 (Colo. App. 2009), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo. 2011).

### 2. Legal Authority

¶ 27 The Double Jeopardy Clauses of the United States and Colorado Constitutions and the doctrine of merger protect an accused "against multiple punishments for the same offense," unless the General Assembly "specif[ied] multiple punishments based upon the same criminal conduct." *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005) (quoting *Whalen v. United States*, 445 U.S. 684, 688 (1980)); *see* U.S. Const. amends V, XIV; Colo. Const. art. II, § 18; *People v. Delci*, 109 P.3d 1035, 1036 (Colo. App. 2004) (discussing the merger doctrine).

¶ 28 The General Assembly has determined that "a defendant may not be convicted of two offenses for the same conduct if the lesser offense is included in the greater." *Page*, ¶ 9, 402 P.3d at 470; *see* § 18-1-408(1)(a), C.R.S. 2019. We apply the statutory elements test articulated in *Reyna-Abarca* to determine whether an offense is a lesser included offense of another. *Page*, ¶ 9, 402 P.3d at 470. The

12

statutory elements test provides that "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Reyna-Abarca*, ¶ 64, 390 P.3d at 826. If the statutory elements test is satisfied, the lesser offense merges into the greater offense. *Id.* at ¶ 79, 390 P.3d at 827-28.

¶ 29    However, "[m]ultiple convictions for two separate offenses the elements of one of which constitute a subset of the elements of the other can clearly stand if the offenses were committed by distinctly different conduct." *People v. Rock*, 2017 CO 84, ¶ 17, 402 P.3d 472, 478. And a defendant may be convicted separately for the same offense if he or she committed the offense more than once. *Id.* Under either circumstance, a defendant may be convicted of both offenses only if (1) "the unit of prosecution prescribed by the legislature permits the charging of multiple offenses" and (2) "the evidence in support of each offense justifies the charging of distinct offenses." *Quintano v. People*, 105 P.3d 585, 590 (Colo. 2005) (citing *Woellhaf*, 105 P.3d at 214).

¶ 30    The unit of prosecution is "the manner in which a criminal

statute permits a defendant's conduct to be divided into discrete

acts for purposes of prosecuting multiple offenses.  Once the

General Assembly prescribes the unit of prosecution, the

prescription determines the scope of protection offered by the

Double Jeopardy Clause."  *Woellhaf*, 105 P.3d at 215 (citations

omitted).  "To determine the unit of prosecution, we look exclusively

to the statute and, where possible, seek to discern the legislative

intent from the plain and ordinary meaning of the statutory

language."  *People v. McMinn*, 2013 COA 94, ¶ 21, 412 P.3d 551,

558.

¶ 31    After identifying the unit of prosecution, "we then examine the

evidence to determine whether the defendant's conduct constituted

factually distinct offenses."  *Id.* at ¶ 22, 412 P.3d at 558.  When

determining whether a course of conduct constituted a single

offense or multiple offenses, we consider the following

nonexhaustive list of factors:

> (1) whether the acts occurred at different times
> and were separated by intervening events; (2)
> whether there were separate volitional acts or
> new volitional departures in the defendant's
> course of conduct; and (3) factors such as

14

temporal proximity, the location of the victim (e.g., if the victim was moved), the defendant's intent as indicated by his or her conduct and utterances, and the number of victims.

*Id.*; *see also Quintano*, 105 P.3d at 591-92; *Woellhaf*, 105 P.3d at 219. We also consider whether the prosecution treated the defendant's acts as legally separable. *Quintano*, 105 P.3d at 592. Ultimately, the critical inquiry is "whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses." *Id.*

3. The Court Erred in Failing to Merge Gillis's Conviction for First Degree Criminal Trespass into His Conviction for First Degree Burglary

¶ 32 Gillis contends, the People concede, and we agree that, pursuant to the statutory elements test, first degree criminal trespass is a lesser included offense of first degree burglary. Thus, the court's failure to merge his conviction for first degree criminal trespass into his conviction for first degree burglary amounted to plain error.

¶ 33 In holding that first degree criminal trespass is a lesser included offense of first degree burglary, we recognize that we depart from decisions of other divisions that took a different

15

position.  *See, e.g.*, *People v. Lucas*, 232 P.3d 155, 168 (Colo. App. 2009) ("First degree criminal trespass is not a lesser included offense of first degree burglary, because it requires entry into a dwelling, which is not an element of burglary by statute or as charged and instructed here."); *see also People v. Garcia*, 940 P.2d 357, 362 (Colo. 1997) (holding that "first degree criminal trespass is not a lesser included offense of second degree burglary").  However, we conclude that the Colorado Supreme Court's analysis in *Rock*, which post-dates these cases, compels the conclusion that first degree criminal trespass is a lesser included offense of first degree burglary.

¶ 34    The Colorado Supreme Court specified the test for determining whether an offense is a lesser included offense in *Reyna-Abarca* and clarified the relationship between criminal trespass and burglary in *Rock*.  *See Rock*, ¶ 20, 402 P.3d at 479 (holding that second degree criminal trespass is a lesser included offense of second degree burglary); *Reyna-Abarca*, ¶ 59, 390 P.3d at 825-26 (explaining that the "prior articulations of the strict elements test have not provided . . . clear and consistent guidance," thereby requiring the supreme court to adopt a standard that can be uniformly applied); *see also*

16

*People v. Smoots*, 2013 COA 152, ¶ 20, 396 P.3d 53, 57 ("We are not obligated to follow the precedent established by another division [of the court of appeals], even though we give such decisions considerable deference."), *aff'd sub nom. Reyna-Abarca*, 2017 CO 15, 390 P.3d 816.

¶ 35 In *Rock*, the court noted that "[s]econd degree burglary is committed by . . . knowingly entering or remaining unlawfully in a 'building or occupied structure,'" which includes a "dwelling." ¶ 20, 402 P.3d at 479 (quoting § 18-4-203(1), C.R.S. 2019); *see* § 18-4-101(1), C.R.S. 2019. It also explained that "second degree criminal trespass is committed by, among various other means of commission, knowingly entering or remaining unlawfully in or upon 'the premises of another,'" which includes "buildings." *Rock*, ¶ 20, 402 P.3d at 479 (quoting § 18-4-503(1)(a), C.R.S. 2019); *see* § 18-4-504.5, C.R.S. 2019. The court then held that

> [w]hile second degree criminal trespass may be committed in ways other than unlawfully entering or remaining in or upon the premises of another and, in fact, the premises at issue in criminal trespass need not even be a building, much less a dwelling, with reference to the element at issue here the commission of second degree criminal trespass requires no more than knowingly and unlawfully entering

17

> or remaining in the dwelling of another, a subset of the statutory elements of second degree burglary.

*Rock*, ¶ 20, 402 P.3d at 479.

¶ 36    As pertinent here, section 18-4-202(1) provides that a conviction for first degree burglary requires proof, among other things, that the defendant (1) knowingly (2) entered unlawfully, or remained unlawfully after a lawful or unlawful entry, (3) in a building or occupied structure. *See also Lucas*, 232 P.3d at 166-67. Section 18-4-502, C.R.S. 2019, similarly provides that a conviction for first degree criminal trespass requires proof that the defendant (1) knowingly and (2) unlawfully (3) entered or remained in a dwelling of another. *See also People v. Hanna*, 981 P.2d 627, 629 (Colo. App. 1998) (discussing the elements of first degree criminal trespass and the meaning of "dwelling").

¶ 37    Like the second degree criminal trespass offense discussed in *Rock*, the elements of first degree criminal trespass are knowingly and unlawfully entering or remaining in the dwelling of another. These elements are a subset of the elements of first degree burglary. Thus, first degree criminal trespass is a lesser included offense of first degree burglary. *See Reyna-Abarca*, ¶ 64, 390 P.3d at 826.

¶ 38    Because the record contains no evidence that Gillis's conduct could be sufficiently differentiated to support a conviction for each offense, the court plainly erred in failing to merge his conviction for first degree criminal trespass into his conviction for first degree burglary. *See id.* at ¶¶ 80-82, 390 P.3d at 828; *Tillery*, 231 P.3d at 48. Accordingly, we vacate Gillis's conviction and sentence for first degree criminal trespass. However, we do not remand for resentencing because the court imposed identical and concurrent sentences for each of Gillis's convictions. *See People v. Berner*, 42 Colo. App. 520, 522, 600 P.2d 112, 114 (1979); *see also People v. Fuentes*, 258 P.3d 320, 326 (Colo. App. 2011) ("[A] court should enter as many convictions and impose as many sentences as are legally possible so as to fully effectuate the jury's verdict.").

4.    The Court Did Not Err in Holding that Gillis's Convictions for Third Degree Assault and First Degree Burglary Did Not Merge

¶ 39    Given that the prosecution charged him with third degree assault as the predicate offense for his first degree burglary charge, Gillis contends that the court erred in failing sua sponte to merge his conviction for third degree assault into his conviction for first degree burglary. We disagree.

19

¶ 40     Gillis is correct in asserting that section 18-4-202(1), which establishes the unit of prosecution, does not authorize separate punishments for first degree burglary and its predicate offense. *See* § 18-4-202(1) (assault is one of the predicate offenses for first degree burglary); *Delci*, 109 P.3d at 1037-38. However, "[s]eparate convictions for even the same offense are permissible if it was committed more than once." *Rock*, ¶ 17, 402 P.3d at 478; *see Quintano*, 105 P.3d at 592 (upholding the defendant's five convictions because sufficiently distinct evidence supported each conviction). Thus, we consider whether Gillis assaulted E.G. more than once. If so, one assault would be the predicate offense for his burglary conviction and the other assault would support a separate conviction for assault.

¶ 41     Although we cannot determine from the record the court's reasoning in not merging Gillis's convictions for first degree burglary and third degree assault, we conclude that this decision was correct because Gillis assaulted E.G. twice. *See Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004) (holding that an appellate court may affirm the trial court's ruling on any grounds supported by the record).

¶ 42    We primarily base our reasoning on two cases: *Quintano* and

*Qureshi v. District Court*, 727 P.2d 45 (Colo. 1986). In *Quintano*, the

supreme court affirmed the defendant's five convictions for sexual

assault on a child based on evidence that he followed the victim

around her aunt's home and (1) touched her breast in the living

room; (2) touched her vaginal area at the home's pool; (3) touched

her buttocks in the bathroom; (4) touched her breast in the

bathroom; and (5) bit her breast in the living room. 105 P.3d at

588-89, 592. It reasoned that

> [t]he record evidences that the defendant had
> sufficient time to reflect after each encounter.
> He persisted after the victim admonished him
> to stop several times. Each incident occurred
> in a different location [of the home], or after
> the victim had left a location and returned
> there. As well, the record reflects sufficient
> breaks between each incident to allow the
> defendant time to reflect. Moreover, the
> defendant's statements supported the forming
> of renewed intentions. Though the record does
> not disclose specifically how long each incident
> lasted, the facts prove that the defendant's
> conduct was separate in temporal proximity
> and constituted a new volitional departure in
> his course of conduct.

*Id.* at 592. The court also noted that the prosecution treated the

defendant's acts as legally separable by charging him with five

counts and arguing in support of all the counts during the preliminary hearing. *Id.*

¶ 43    In *Qureshi,* the supreme court upheld the defendant's convictions for attempted manslaughter and first degree assault because "there were two separate and different sets of acts which occasioned two crimes." 727 P.2d at 47. It held that the evidence at trial supported the defendant's conviction for first degree assault because he stabbed the victim in the abdomen and his conviction for attempted manslaughter because, after the victim escaped the initial assault, he pursued her to a separate room and stabbed her again. *Id.*

¶ 44    For four reasons, we discern no meaningful difference between the facts supporting Gillis's convictions for first degree burglary and third degree assault and the facts supporting the defendants' multiple convictions in *Quintano* and *Qureshi.*

¶ 45    First, Gillis's conduct occurred at different times and was separated by intervening events. Gillis initially assaulted E.G. by smothering her after throwing her on the floor and on her bed. Then, after E.G. managed to escape to the bathroom, text her friend for help, and emerge from the bathroom, Gillis slammed her head

22

into a wall, dragged her down the hallway, and choked her with a towel. Thus, like the defendants in *Quintano* and *Qureshi*, Gillis engaged in an initial criminal act, allowed the victim to leave the immediate area, and then committed another criminal act against the same victim after a short period of time.

¶ 46 Second, Gillis engaged in separate volitional acts during his assaults on E.G. E.G. yelled at Gillis to stop throughout the entire episode — before he kicked down her door and while in her apartment. Therefore, like the defendant in *Quintano*, Gillis knew that the victim opposed his actions, but proceeded anyway. 105 P.3d at 592. Moreover, while E.G. was in the bathroom, Gillis had sufficient opportunity to reflect on his course of conduct. *See id.*; *Qureshi*, 727 P.2d at 47.

¶ 47 Third, Gillis's conduct supported the formation of renewed intentions to assault E.G. He assaulted her at different locations within her apartment. As noted above, after E.G. temporarily escaped to the bathroom, Gillis had time to reflect on his actions. Instead of leaving the apartment or de-escalating the situation, he hit or kicked the bathroom door until E.G. emerged, slammed her head into a wall, dragged her across the floor, and choked her with

a towel. And, this time, the assault occurred in the hallway and in the kitchen of E.G.'s apartment, instead of near the front door and in the bedroom. *See Quintano*, 105 P.3d at 592; *Qureshi*, 727 P.2d at 47.

¶ 48 Lastly, although the prosecutor did not clearly argue that each of Gillis's acts (and E.G.'s corresponding injuries) fit into one of two distinct assaults, Gillis was charged with first degree burglary and second degree assault. The prosecutor consistently asserted that Gillis committed all the charged offenses. Thus, the prosecution treated Gillis's assaults as legally separable. *See Quintano*, 105 P.3d at 592.

¶ 49 Because each of the four factors supports our conclusion that Gillis assaulted E.G. twice and because "the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses," *id.*, we hold that the court did not err in entering the convictions for first degree burglary and third degree assault.

### III. Conclusion

¶ 50 Gillis's conviction for first degree criminal trespass is vacated. We affirm his convictions for first degree burglary and third degree assault.

JUDGE FOX and JUDGE BERGER concur.