21CA1822 Peo v Pride 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 21CA1822 Jefferson County District Court No. 19CR2677 Honorable Jason Carrithers, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Christopher Michael Pride, Defendant-Appellant. JUDGMENT AFFIRMED IN PART AND VACATED IN PART, AND CASE REMANDED WITH DIRECTIONS Division VII Opinion by JUDGE TAUBMAN* Tow and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Philip J. Weiser, Attorney General, Jessica E. Ross, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Eric A. Samler, Alternate Defense Counsel, Hollis A. Whitson, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023.
1 ¶ 1 Defendant, Christopher Michael Pride, appeals the judgment of conviction entered after a jury found him guilty of first degree murder (felony murder), aggravated robbery, and conspiracy to commit aggravated robbery. We vacate certain convictions based on merger and double jeopardy, as discussed below, and we remand the case to the trial court to correct the mittimus and conduct a new abbreviated proportionality review. In all other respects, we affirm. I. Background ¶ 2 In June 2019, R.V. was shot and killed during a robbery at his father’s trailer park. A.S. was also robbed and shot. However, A.S. survived and suffered brain damage. ¶ 3 A police investigation determined that multiple people were involved in the robbery and shooting, including Pride. The prosecution charged Pride with (1) first degree murder (after deliberation); (2) first degree murder (felony murder); (3) attempted first degree murder; (4) attempted first degree assault; (5) multiple counts of aggravated robbery; (6) multiple counts of conspiracy to commit aggravated robbery; (7) multiple crime of violence counts; and (8) habitual criminal charges. 
2 ¶ 4 Pride told investigators, and maintained throughout the trial, that he was not involved in the robbery or shooting, and that he was on his way to Colorado Springs at the time of the incident. ¶ 5 At trial, the prosecution relied on cell phone location data to disprove Pride’s theory of defense. The prosecution’s witness, Detective Daniel Simpson, who was accepted as an expert in historical cellular analysis, testified that based on the data he received from Pride’s and other suspects’ cell phone carriers, Pride’s phone was in the area at the time of the burglary and murder. The trial court also admitted Detective Simpson’s expert report, which contained maps showing which cell phone towers Pride’s and other suspects’ phones pinged when the incident occurred. ¶ 6 The trial court sentenced Pride to life in the custody of the Department of Corrections without the possibility of parole for his felony murder conviction, to sixty-four years in prison for each of his aggravated robbery convictions, and twenty-four years in prison for each of his conspiracy convictions. All of the sentences run concurrently with the life sentence, except for one of the sixty-four-
year sentences, which runs consecutively. 
3 ¶ 7 On appeal, Pride asserts that (1) the multiple convictions entered against him violate his right to be free from double jeopardy; (2) the trial court abused its discretion by admitting the expert’s report on historical cellular analysis; (3) the trial court’s complicity liability instruction did not reflect the applicable law; (4) the trial court did not conduct a proper abbreviated proportionality review of his sentences; and (5) the statute requiring a life sentence as the penalty for felony murder is unconstitutional. We address each contention in turn. II. Multiplicity and Double Jeopardy ¶ 8 Pride contends, the People concede,
1
and we agree that the multiple convictions entered against him for aggravated robbery and conspiracy to commit aggravated robbery violate his right to be free from double jeopardy. A. Standard of Review and Applicable Law ¶ 9 We review de novo whether “multiplicitous convictions violate a defendant’s right to be free from double jeopardy.” People v. Meils, 2019 COA 180, ¶ 39, 471 P.3d 1130, 1137; see Thomas v. People, 1 We are not bound by the People’s concessions on legal issues, People v. Sabell, 2018 COA 85, ¶ 48 n.5, 452 P.3d 91, 100 n.5. 
4 2021 CO 84, ¶ 19, 500 P.3d 1095, 1101. “Double jeopardy sentencing errors require automatic reversal even when the error [is not] obvious to the district court.” Whiteaker v. People, 2024 CO 25, ¶ 2, 547 P.3d 1122, 1124. B. Multiplicity ¶ 10 “Multiplicity is the charging of the same offense in several counts, culminating in multiple punishments.” Meils, ¶ 40, 471 P.3d at 1138 (quoting People v. McMinn, 2013 COA 94, ¶ 19, 412 P.3d 551, 557). Multiplicitous “convictions are prohibited because they violate the constitutional prohibition against double jeopardy.” Id. (quoting McMinn, ¶ 19, 412 P.3d at 557); see U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18. Accordingly, a defendant may not be convicted of more than one crime for the same actions unless the defendant’s “conduct constitutes factually distinct offenses.” People v. Barry, 2015 COA 4, ¶ 97, 349 P.3d 1139, 1157; see People v. Gillis, 2020 COA 68, ¶ 29, 471 P.3d 1197, 1203. 1. Conspiracy Convictions ¶ 11 “[A] single conspiratorial agreement may not be divided into multiple charges,” even if the objective of the single agreement is to 
5 commit multiple crimes. People v. Davis, 2017 COA 40M, ¶ 17, 488 P.3d 186, 191; § 18-2-201(4), C.R.S. 2023. ¶ 12 Pride was convicted on four separate charges for conspiracy to commit aggravated robbery, two for each victim. The charges were predicated on different subsections of the aggravated robbery statute; however, the charges were based on one criminal episode. Accordingly, only one conviction for conspiracy to commit aggravated robbery can be entered against Pride. Therefore, counts 15, 16, and 17 must merge into count 14. 2. Aggravated Robbery Convictions ¶ 13 The jury also convicted Pride on four counts of aggravated robbery, two for each victim. Like the conspiracy counts, the aggravated robbery counts were predicated on different subsections of the aggravated robbery statute. § 18-4-302, C.R.S. 2023. ¶ 14 In People v. Serna-Lopez, a division of this court determined that “the General Assembly has not defined separate offenses under section 18-4-302 but, rather, alternative means of committing the same offense.” 2023 COA 21, ¶ 19, 531 P.3d 410, 415. Accordingly, only two convictions for aggravated robbery, one for each victim, can be entered against Pride. See Barry, ¶ 96, 349 
6 P.3d at 1157 (where a single statute defines alternative ways of committing the same offense, only a single conviction for that offense can enter). ¶ 15 Multiplicitous convictions must merge, and in so doing, we must maximize the effect of the jury verdicts. Meils, ¶ 45, 471 P.3d at 1139. Therefore, count 8 must merge into count 7 for the aggravated robbery of R.V. Because the sentence of sixty-four years for Pride’s conviction on count 10 runs consecutively to his life sentence while the sentence for his conviction on count 11 runs concurrently with his life sentence, count 11 must merge into count 10 for the aggravated robbery of A.S. C. Merger ¶ 16 “Merger gives effect to double jeopardy and seeks to protect a defendant from being punished twice for a single criminal act.” People v. Kirby, 2024 COA 20, ¶ 29, ___ P.3d ___, ___. The doctrine of merger precludes a conviction for a crime that is the lesser included offense of another crime for which the defendant has been convicted in the same prosecution. People v. Wood, 2019 CO 7, ¶ 30, 433 P.3d 585, 593; see § 18-1-408(1)(a), C.R.S. 2023. 
7 ¶ 17 Accordingly, if a defendant is found guilty of both a greater offense and its lesser included offense, the conviction for the lesser included offense must merge into the conviction for the greater offense. Page v. People, 2017 CO 88, ¶ 9, 402 P.3d 468, 470. ¶ 18 Because Pride’s charge for felony murder “required proof of the very same elements essential to the charge of [aggravated] robbery,” the aggravated robbery was a lesser included offense of felony murder. People v. Raymer, 662 P.2d 1066, 1069 (Colo. 1983); see Wood, ¶ 30, 433 P.3d at 593. Accordingly, the remaining conviction for the aggravated robbery of R.V., count 7, must merge into the conviction for felony murder, count 2. ¶ 19 Accordingly, we determine that the trial court erred by entering multiple convictions for aggravated robbery and conspiracy to commit aggravated robbery against Pride. Therefore, we remand the case for the trial court to merge counts 7 and 8 into count 2; merge count 11 into count 10; and merge counts 15, 16, and 17 into count 14. III. Expert’s Report ¶ 20 Pride contends that the trial court abused its discretion by admitting Detective Simpson’s expert report on historical cellular 
8 analysis because it constituted inadmissible hearsay. We disagree and also conclude that any error was harmless. A. Standard of Review and Applicable Law ¶ 21 We review a trial court’s rulings on the admissibility of evidence for an abuse of discretion. People v. Brown, 2022 COA 19, ¶ 57, 510 P.3d 579, 590. A court abuses its discretion when its ruling is “manifestly arbitrary, unreasonable, or unfair.” Id. (quoting People v. Clark, 2015 COA 44, ¶ 14, 370 P.3d 197, 204). If we determine that the trial court abused its discretion, we only reverse if we find that the error was not harmless — meaning it substantially influenced the verdict or affected the fairness of the trial. People v. Thames, 2019 COA 124, ¶ 59, 467 P.3d 1181, 1193. ¶ 22 Hearsay is “a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” CRE 801(c). Hearsay statements are generally inadmissible unless an exception applies. CRE 802. B. Additional Facts ¶ 23 At trial, the prosecution sought to introduce Detective Simpson’s expert report on historical cell phone analysis. 
9 ¶ 24 The first portion of the report explained the technology and methodology behind historical cellular analysis and the cell phone information for various suspects that Detective Simpson received from their respective cell phone carriers. The second portion of the report contained maps plotting the historical cellular data from those suspects. ¶ 25 During a bench conference concerning the admissibility of the report, the trial court permitted the prosecution to divide the report into two exhibits. The first portion of the report was to be used as a demonstrative aid, and only the second portion would be admitted into evidence and allowed to go to the jury. C. Analysis ¶ 26 We conclude that the trial court did not abuse its discretion by admitting the second portion of the report containing only the cell phone tower maps because they were not inadmissible hearsay. The maps were automatically generated based on the information Detective Simpson provided to the software. Accordingly, the data and maps are not statements within the meaning of CRE 801. See People v. Woodyard, 2023 COA 78, ¶ 82, 540 P.3d 278, 296. 
10 ¶ 27 Pride also relies on CRE 703 — which provides that “[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert’s opinion substantially outweighs their prejudicial effect” — to assert that the information should not have been disclosed to the jury. However, Pride’s argument only focuses on the first half of this rule and does not acknowledge that the trial court determined that the second portion of the report was admissible because “it will assist [the jury].” ¶ 28 Pride further asserts that the record indicates that the entirety of Detective Simpson’s report was submitted to the jury rather than only the portion containing the cellular tower maps. However, we need not determine whether only a portion or the entirety of the report was submitted to the jury because any error was harmless. ¶ 29 The information on the methodology and technology of historical cellular analysis contained in the first portion of Detective Simpson’s report was already properly admitted through the detective’s testimony and was therefore cumulative. See People v. Stone, 2021 COA 104, ¶ 32, 498 P.3d 666, 673 (“Because the 
11 photographs were cumulative of Westbrook’s testimony, the trial court’s error in admitting them could not have contributed to the jury’s verdict and was therefore . . . harmless error.”) (cert. granted Oct. 17, 2022); People v. Mapps, 231 P.3d 5, 11 (Colo. App. 2009); see also Golob v. People, 180 P.3d 1006, 1010 (Colo. 2008) (CRE 703 permits “an expert to testify to facts and data that are otherwise inadmissible in evidence so long as they formed the basis of the expert’s opinion and are of the type reasonably relied upon by experts in the field”). ¶ 30 Accordingly, the trial court did not abuse its discretion by admitting the second portion of the report containing the cellular tower maps, and any error in submitting the first portion of the report to the jury was harmless. IV. Complicity Jury Instruction ¶ 31 Pride also contends that the trial court failed to properly instruct the jury on the applicable law. Specifically, he asserts that the trial court plainly erred by using a jury instruction on complicity liability that did not mirror the model jury instruction or incorporate the changes to complicity liability outlined in People v. Childress, 2015 CO 65M, ¶ 34, 363 P.3d 155, 165. We disagree. 
12 A. Standard of Review and Applicable Law ¶ 32 The trial court has a duty to instruct the jury correctly on all matters of law. People v. Knapp, 2020 COA 107, ¶ 20, 487 P.3d 1243, 1250. ¶ 33 We agree with the parties that this issue is not preserved for our review because while defense counsel objected to the trial court’s complicity jury instruction, she did not object on the ground that the instruction did not reflect the current governing law. Accordingly, we review for plain error. Garcia v. People, 2019 CO 64, ¶ 20, 445 P.3d 1065, 1068. An error is plain if it is both obvious and substantial — meaning it “so undermine[d] the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.” Gillis, ¶ 26, 471 P.3d at 1203 (citation omitted). B. Analysis ¶ 34 The trial court gave the following jury instruction on complicity liability: Complicity is not a separate crime. Rather, it is a legal theory by which one person may be found guilty of a criminal offense that was committed [in whole or in part] by another person. To be guilty as a complicitor, the 
13 prosecution must prove each of the following circumstances beyond a reasonable doubt: 1. A crime must have been committed. 2. Another person must have committed all or part of the crime. 3. The defendant must have had knowledge that the other person intended to commit all or part of the crime. 4. The defendant must have had the intent to promote or facilitate the commission of the crime. 5. The defendant must have aided, abetted, advised, or encouraged the other person in planning or committing the crime. ¶ 35 Under the complicity statute, “[a] person is legally accountable as [the] principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.” § 18-1-603, C.R.S. 2023. In Childress, the supreme court clarified that complicity liability has a “dual mental state requirement,” meaning that the complicitor must have (1) the intent, in the commonly understood sense of desiring or having a purpose or design, to aid, abet, advise, or encourage the principal in his criminal act or conduct, and 
14 (2) an awareness of those circumstances attending the act or conduct he seeks to further that are necessary for commission of the offense in question. Childress, ¶ 29, 363 P.3d at 164. ¶ 36 While the trial court’s complicity instruction did not mirror the updated pattern jury instruction on complicity liability or explicitly mention the dual mental state requirement reflected in Childress, we perceive no error. ¶ 37 First, a trial court is not required to use pattern jury instructions. People v. Flockhart, 2013 CO 42, ¶ 12, 304 P.3d 227, 231; see also Garcia, ¶ 22, 445 P.3d at 1069. Second, a division of this court has held that a jury instruction nearly identical to the one in this case sufficiently reflected the state of complicitor liability after Childress, though it did not consider the new pattern jury instruction. People v. Jackson, 2018 COA 79, ¶ 66, 474 P.3d 60, 74, aff’d on other grounds, 2020 CO 75, 472 P.3d 553. ¶ 38 Accordingly, we conclude that the trial court did not err by using a complicity jury instruction that pre-dated Childress. Regardless, even if the instruction was erroneous, any error was not obvious in light of Jackson. See Scott v. People, 2017 CO 16, ¶ 17, 
15 390 P.3d 832, 835 (“[A]n error will not ordinarily be deemed ‘obvious’ when either this court or a division of the court of appeals has previously rejected an argument being advanced by a subsequent party who is asserting plain error.”). ¶ 39 We also reject Pride’s contention that the trial court should have provided a separate complicity instruction for each offense. Pride asserts that not doing so was obvious error because a comment to the COLJI states, “If the court decides to instruct the jury on the theory of complicity liability with respect to multiple crimes, it should provide a separate complicity liability instruction for each crime.” COLJI-Crim. J:03 cmt. 9 (2023). However, while a pattern jury instruction and its accompanying comments are guidelines that carry weight, they are not controlling. People v. Rester, 36 P.3d 98, 102 (Colo. App. 2001). ¶ 40 Moreover, we decline to address Pride’s contention that he was entitled to his proffered “mere presence” instruction. Because we conclude that the complicity instruction properly instructed the jury on the applicable law, a “mere presence” instruction was not required because it was encompassed by the instructions as a whole. See People v. Simien, 671 P.2d 1021, 1024 (Colo. App. 1983) 
16 (“[W]here proper instructions are given concerning the presumption of innocence, the prosecution’s burden of proof, reasonable doubt, the essential elements of the offenses, and the definition of the requisite mens rea, the so called ‘mere presence’ instruction is necessarily encompassed by the instructions as a whole, and need not be given.”). V. Abbreviated Proportionality Review ¶ 41 Pride contends that the trial court did not conduct a proper abbreviated proportionality review to determine whether his habitual offender sentences are disproportionate to the nature and severity of his offenses in violation of article II, section 20 of the Colorado Constitution
2 and the Eighth Amendment. We agree and remand for the trial court to conduct an abbreviated proportionality review in accordance with the principles set forth in Wells-Yates v. People, 2019 CO 90M, 454 P.3d 191. 2 We do not separately address Pride’s challenge under the Colorado Constitution because he does not make a distinct argument from his federal constitutional challenge. See People v. Lewis, 2017 COA 147, ¶ 12 n.2, 433 P.3d 70, 74 n.2. 
17 A. Additional Facts ¶ 42 The trial court determined that Pride was a habitual offender based on (1) a conviction for aggravated motor vehicle theft; (2) a conviction for criminal attempt to commit illegal discharge of a firearm; (3) a federal conviction for being a felon in possession of a firearm and aiding and abetting; and (4) a federal conviction for being a felon in possession of a firearm. ¶ 43 Pursuant to the habitual offender statute, section 18-1.3-801, C.R.S. 2023, the trial court sentenced Pride to life without the possibility of parole for the felony murder conviction, sixty-four years running consecutively to the life sentence for the aggravated robbery conviction, and twenty-four years running concurrently to the life sentence for the conspiracy conviction.
3 Pride’s defense counsel then requested that the trial court conduct an abbreviated proportionality review. In its review, which did not mirror the two-
step analysis set forth in Wells-Yates, the trial court concluded, [C]onsidering what the Court knows about the allegations in other cases, the use of weapons in other cases, or the aggravated nature of 3 This statement reflects what Pride’s sentences will be after the mittimus is corrected to merge and vacate certain convictions in accordance with this opinion. 
18 some of the other cases, the Court at this point is comfortable with the sentence. I find the sentence to be appropriate, supported by statute, and supported by the facts of the case, and I’m not going to conduct any additional abbreviated review. B. Standard of Review and Applicable Law ¶ 44 We review de novo whether a sentence is constitutionally proportionate. See Wells-Yates, ¶ 35, 454 P.3d at 204. ¶ 45 The United States and Colorado Constitutions prohibit “extreme sentences that are ‘grossly disproportionate’ to the crime.” Id. at ¶¶ 5, 10, 454 P.3d at 196-97 (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)); see also U.S. Const. amend. VIII; Colo. Const. art. II, § 20. In conducting an abbreviated proportionality review, a trial court must engage in a two-step analysis. ¶ 46 First, the court must consider the “triggering offense and the predicate offenses together and determine whether, in combination, they are so lacking in gravity or seriousness as to raise an inference that the sentence imposed on that triggering offense is grossly disproportionate.” Wells-Yates, ¶ 2, 454 P.3d at 195. “If there are 
19 multiple triggering offenses, the reviewing court must look at the sentence imposed for each such offense and engage in a proportionality review of that sentence because each sentence represents a separate punishment for a distinct and separate crime.” Id. at ¶ 24, 454 P.3d at 201. ¶ 47 Second, the court must consider “the harshness of the sentence imposed.” Id. at ¶ 23, 454 P.3d at 201. If the abbreviated proportionality review does not give rise to an inference of gross disproportionality, the court need not conduct an extended proportionality review. See id. at ¶ 15, 454 P.3d at 198-99. ¶ 48 When multiple triggering offenses are involved, the court must examine each sentence separately to determine “whether the corresponding triggering offense and the predicate offenses, considered together, are so lacking in gravity or seriousness as to suggest that the sentence is grossly disproportionate.” Id. at ¶ 24, 454 P.3d at 202. A court will only conduct an extended proportionality review of a habitual offender sentence “if the abbreviated proportionality review raises an inference that the defendant’s sentence was ‘grossly disproportionate’ to the gravity of his offense.” People v. Tran, 2020 COA 99, ¶ 82, 469 P.3d 568, 579. 
20 C. Analysis ¶ 49 Certain crimes are considered “inherently (or per se) grave or serious for proportionality purposes.” Wells-Yates, ¶ 13, 454 P.3d at 198. “[O]thers may be grave or serious depending on their particular facts and circumstances.” People v. Loris, 2018 COA 101, ¶ 12, 434 P.3d 754, 757. If an offense is per se grave or serious, the court need not further consider the facts and circumstances surrounding the offense but may proceed directly to the question of whether the sentence imposed was grossly disproportionate to the crimes of conviction. Wells-Yates, ¶¶ 13, 75, 454 P.3d at 198, 211. ¶ 50 However, if a crime is not per se grave or serious, the court “should consider ‘the harm caused or threatened to the victim or society,’ as well as ‘the culpability of the offender.’” Id. at ¶ 12, 454 P.3d at 198 (quoting Solem v. Helm, 463 U.S. 277, 292 (1983)). Relevant factors include the magnitude of the offense; “whether the crime is a lesser-included offense or the greater-inclusive offense; whether the crime involves a completed act or an attempt to commit an act; and whether the defendant was a principal or an accessory after the fact in the criminal episode.” Id. In considering the 
21 defendant’s culpability, the court should also consider the defendant’s motive and mental state. Id. ¶ 51 Pride concedes that his conviction for the triggering offense of aggravated robbery is per se grave or serious. See id. at ¶ 65, 454 P.3d at 209. Felony murder is also a per se grave or serious crime. People v. Sellers, 2022 COA 102, ¶ 65, 521 P.3d 1066, 1079 (cert. granted May 15, 2023). As Pride asserts, none of his predicate offenses — aggravated motor vehicle theft, attempted illegal discharge of a weapon, being a felon in possession of a firearm, and aiding and abetting — is per se grave or serious. Accordingly, the trial court should have considered the factual basis for these convictions to determine their magnitude. See People v. Wright, 2021 COA 106, ¶ 72, 498 P.3d 1147, 1162. Because the People did not present any evidence pertaining to the factual circumstances underlying the predicate offenses, the trial court could not have meaningfully considered their gravity or seriousness. ¶ 52 Pride seems to overlook that even if the trial court had found that his predicate offenses were not grave or serious, it would not end the trial court’s inquiry into the proportionality of the sentence. Id. at ¶ 65, 498 P.3d at 1161. Rather, 
22 “even when the triggering offenses and/or the predicate offenses supporting a habitual criminal sentence include grave or serious crimes” — either per se grave or serious crimes or those crimes where the underlying conduct is found to have been grave or serious — “it would be improper for a court to skip the second subpart of an abbreviated proportionality review and neglect to consider the harshness of the penalty or to conclude that when the circumstances described are present there can be no inference of gross disproportionality.” Id. at ¶ 86, 498 P.3d at 1164 (quoting Wells-Yates, ¶ 27, 454 P.3d at 202). ¶ 53 Therefore, because we are not in a position to analyze the facts and circumstances surrounding each of Pride’s convictions for the predicate offenses, we remand the case for the trial court to conduct an abbreviated proportionality review of all Pride’s sentences, including the life sentence, in accordance with the precepts of 
23 Wells-Yates.
4 See id. at ¶¶ 86-87, 498 P.3d at 1164. Specifically, the court should consider the per se grave or serious nature of Pride’s triggering offenses together with the predicate offenses to determine whether the sentences imposed are grossly disproportionate. Wells-Yates, ¶¶ 13, 75, 454 P.3d at 198, 211. VI. Constitutionality of the Felony Murder Statute ¶ 54 Last, Pride challenges the statute requiring a life sentence without the possibility of parole for a felony murder conviction on various constitutional grounds: (1) article II, section 20 and the Eighth Amendment categorically bar a mandatory life sentence for felony murder as cruel and unusual punishment; (2) a mandatory life sentence for felony murder is a constitutionally disproportionate penalty; and (3) the prospective language of the General Assembly’s 4 We also remand for the trial court to amend the mittimus to add Pride’s convictions on habitual counts 27, 28, 29, and 30, which were inadvertently not included. See Crim. P. 52(b) (we may notice errors that are plain, even when the parties did not bring them to our attention); Crim. P. 36 (“Clerical mistakes in judgments, orders, or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.”); People v. Wood, 2019 CO 7, ¶ 40, 433 P.3d 585, 595. 
24 recently amended statute is unconstitutional.
5 For the reasons explained below, we exercise our discretion and decline to address these contentions. ¶ 55 We review de novo the constitutionality of a sentence. People v. Hines, 2021 COA 45, ¶ 59, 491 P.3d 578, 589. To the extent that our review requires consideration of constitutionality of a statute, our review is also de novo. People v. Stone, 2020 COA 23, ¶ 23, 471 P.3d 1148, 1153. ¶ 56 However, we may exercise our discretion in addressing an unpreserved challenge to the constitutionality of a statute, “but only where doing so would clearly further judicial economy.” People v. Houser, 2013 COA 11, ¶¶ 31, 35, 337 P.3d 1238, 1247-48. Judicial economy can be examined from two perspectives. The narrower view looks only forward, from the case pending before the appellate court, in deciding whether efficiency can be achieved by that court deciding an issue because it is likely to arise in a later proceeding below. The broader view looks systemically, from the start of the case, in also 5 We decline to address Pride’s contention that a mandatory life sentence for felony murder violates his right to due process because it is not developed. See People v. West, 2019 COA 131, ¶ 23, 461 P.3d 591, 598. To the extent that Pride’s due process argument is couched as a proportionality claim, we decline to address it for the reasons stated above. 
25 considering the efficiency that could have been achieved by raising the issue earlier. Id. at ¶ 36, 337 P.3d at 1248. ¶ 57 Pride did not raise his constitutional arguments until this direct appeal of his conviction. Accordingly, we decline to address Pride’s constitutional challenges of two reasons: (1) the issues Pride raises were largely addressed by a division of this court in Sellers, which the Colorado Supreme Court is already reviewing; and (2) Pride does not explain, nor do we discern, how addressing his challenge would promote judicial economy. See People v. Duncan, 2023 COA 122, ¶ 25, 545 P.3d 963, 971; People v. Butler, 2017 COA 117, ¶ 36, 431 P.3d 643, 650. VII. Disposition ¶ 58 Accordingly, we vacate the convictions that violate Pride’s right to be free from double jeopardy and remand the case for the correction of the mittimus to reflect the merger of counts 7 and 8 into count 2, merger of count 11 into count 10, and merger of counts 15, 16, and 17 into count 14. On remand, the trial court must also conduct a new abbreviated proportionality review of Pride’s sentences. In all other respects, the judgment is affirmed. 
26 JUDGE TOW and JUDGE KUHN concur.