The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 1, 2021

## 2021COA90

**No. 21CA0079, *Winston v. Polis* — Constitutional Law — Colorado Constitution — Excessive Bail, Fines, or Punishment — Separation of Powers; Jurisdiction of Courts — Subject Matter Jurisdiction**

In this proceeding, a division of the court of appeals considers whether, under the separation of powers doctrine, the trial court has subject matter jurisdiction to consider whether the Governor has failed to protect medically vulnerable prisoners from the threat of COVID-19, thereby violating article II, section 20 of the Colorado Constitution. The division concludes that, because the judiciary retains jurisdiction to evaluate the constitutionality of executive conduct and the plaintiffs allege a violation of a fundamental constitutional right, the trial court has jurisdiction to consider whether the current conditions in Colorado prisons violate the

prisoners' rights under the Colorado Constitution even if it cannot direct the Governor to implement a particular remedy.

The division also concludes that, under *Raven v. Polis*, 2021 CO 8, ¶ 1, the Governor is a proper defendant in this case and declines to decide whether the prisoners could be entitled to mandamus relief under C.R.C.P. 106(a)(2).

Court of Appeals No. 21CA0079
City and County of Denver District Court No. 20CV31823
Honorable Kandace C. Gerdes, Judge

Gary Winston, John Peckham, Matthew Aldaz, William Stevenson, and Dean Carbajal,

Plaintiffs-Appellants,

v.

Jared Polis, in his official capacity as Governor of the State of Colorado,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE FOX
Dunn and Graham*, JJ., concur

Announced July 1, 2021

Mark Silverstein, Rebecca Wallace, Sara R. Neel, Denver, Colorado; Maxted Law, LLC, David Maxted, Rachel Z. Geiman, Denver, Colorado; Holland, Holland Edwards & Grossman, LLC, John Holland, Anna Holland Edwards, Erica Grossman, Rachel Kennedy, Dan Weiss, Denver, Colorado; Laura Rovner, Nicole B. Godfrey, Denver, Colorado; Killmer, Lane & Newman, LLP, Mari Newman, Darold W. Killmer, Andy McNulty, Liana Orshan, Reid Allison, Denver, Colorado; Finger Law P.C., Bill Finger, Evergreen, Colorado, for Plaintiffs-Appellants

Philip J. Weiser, Attorney General, Grant T. Sullivan, Assistant Solicitor General, LeeAnn Morrill, First Assistant Attorney General, Daniel Jozwiak, Fellow Assistant Attorney General, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1    Gary Winston, John Peckham, Matthew Aldaz, William Stevenson, and Dean Carbajal (collectively, Plaintiffs) appeal the trial court's dismissal of their class action suit against Governor Jared Polis.  Plaintiffs are (or were) confined[1] in Colorado Department of Corrections (CDOC) facilities, and their amended complaint alleges that the Governor has failed to protect them from the threat of COVID-19, thereby violating article II, section 20 of the Colorado Constitution.  On appeal, Plaintiffs argue that the trial court erred by concluding that (1) the Governor is not a proper defendant to their claim; (2) the separation of powers doctrine deprived the court of jurisdiction to order injunctive or declarative relief; and (3) they were not entitled to mandamus relief under C.R.C.P. 106(a)(2).

¶ 2    We conclude that, under *Raven v. Polis*, 2021 CO 8, ¶ 1, the Governor is a proper defendant in this case.  Further, we conclude that the separation of powers doctrine does not deprive the trial court of jurisdiction to adjudicate Plaintiffs' constitutional claim.

---

[1] The briefs assert that Gary Winston was released on parole before Plaintiffs filed their opening appellate brief.

Accordingly, we reverse and remand to the trial court for further proceedings.

## I. Background

¶ 3     Plaintiffs assert that their medical vulnerabilities place them at high risk of death or serious illness from COVID-19. They also allege that the current conditions in Colorado prisons are unconstitutional due to the excessive risk of harm posed by COVID-19. In particular, they claim that Colorado prisons cannot provide "the necessary physical distancing and hygiene required to mitigate the risk of [COVID-19] transmission" and lack "adequate medical facilities to treat serious COVID-19 cases."

¶ 4     In May 2020, Plaintiffs sued the Governor and CDOC Executive Director Dean Williams, seeking declaratory relief and an injunction requiring them to, among other things, implement various health and safety measures and reduce the population in CDOC custody. After reaching an agreement with the CDOC to alleviate some of the alleged risks, Plaintiffs amended their complaint to seek a declaration that the Governor's "inaction violates" the Colorado Constitution and an injunction compelling the Governor to reduce the prison population or "[t]ake other

measures to cure the Constitutional violations." Alternatively, Plaintiffs asked the court to issue a writ of mandamus directing the Governor "to exercise his powers under . . . [section] 24-33.5-704[, C.R.S. 2020,] to correct the unconstitutional conditions and fulfill his emergency response duties." The Governor quickly moved to dismiss, arguing that (1) he is an improper defendant because he does not manage the day-to-day operations of CDOC facilities; (2) the court lacked subject matter jurisdiction to order the Governor to exercise his discretionary powers; and (3) mandamus relief is not available to compel discretionary actions.

¶ 5    The trial court agreed with the Governor and dismissed Plaintiffs' claim. Specifically, the trial court ruled that the Governor was not a proper party and dismissed under C.R.C.P. 12(b)(5). It also ruled that it lacked jurisdiction because, under the separation of powers doctrine, it could not order the Governor to release prisoners or take any other particular action that lies "within the Governor's sound discretion and exclusive authority." The trial court also ruled that it could not grant Plaintiffs' request for declaratory relief because, unlike other cases where Colorado courts have reviewed the constitutionality of executive actions, "[t]he Court

does not have the power to declare the Governor's alleged failure to act unconstitutional."

## II. The Governor is a Proper Defendant

¶ 6 The parties agree that Plaintiffs preserved their argument that the Governor is a proper defendant in this case. We review de novo a trial court's dismissal of an action under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted. *Butler v. Bd. of Cnty. Comm'rs*, 2021 COA 32, ¶ 7. We accept all factual allegations in the complaint as true and view those allegations in the light most favorable to the plaintiff. *Id.* To survive a motion to dismiss, a complaint must plead sufficient facts that, if taken as true, suggest plausible grounds to support a claim for relief. *Id.*; *see also Warne v. Hall*, 2016 CO 50, ¶¶ 9, 24.

¶ 7 Plaintiffs argue, the Governor now concedes, and we agree that the Governor is a proper defendant. In *Raven v. Polis* — issued five weeks after the trial court's order — the Colorado Supreme Court held that the Governor is a proper named defendant in a lawsuit challenging the confinement conditions at CDOC facilities. 2021 CO 8, ¶ 5. Specifically, the *Raven* court held that, "[b]ecause the Governor 'has final authority to order the executive directors of all

state agencies to commence or cease any action on behalf of the state,'" he was a proper named defendant in that case. *Id.* at ¶¶ 14, 18 (quoting *Sportsmen's Wildlife Def. Fund v. U.S. Dep't of Interior*, 949 F. Supp. 1510, 1515 (D. Colo. 1996)).

¶ 8 The analysis in *Raven* applies equally here. Plaintiffs challenge their conditions of confinement at CDOC facilities — an executive agency under the Governor's control — and thus the Governor is a proper defendant for the claim asserted. *Id.* at ¶ 18. Accordingly, we conclude that — not having had the benefit of *Raven* — the trial court erred by holding that the Governor was not a proper defendant. *Id.*

### III. The Separation of Powers Doctrine Does Not Deprive the Trial Court of Jurisdiction to Hear Plaintiffs' Claim

#### A. Preservation and Standard of Review

¶ 9 The parties agree that Plaintiffs generally preserved their constitutional claim against the Governor; however, the Governor argues that Plaintiffs did not raise their argument regarding the Governor's alleged failure to prioritize prisoners for vaccine eligibility before the trial court. We need not consider this dispute because the issue was not raised in the amended complaint and, as

discussed below, the trial court has jurisdiction to consider whether the current conditions in the CDOC violate Plaintiffs' rights under the Colorado Constitution even if it cannot direct the Governor to implement a particular remedy.

¶ 10　　We apply a mixed standard of review to motions to dismiss for lack of subject matter jurisdiction. *Wal-Mart Stores, Inc. v. United Food & Com. Workers Int'l Union*, 2016 COA 72, ¶ 6. We review the trial court's factual findings for clear error; they are binding unless so clearly erroneous as to find no support in the record. *Id.* The court's legal conclusions are reviewed de novo, *id.*, including questions of law involving the separation of powers doctrine. *Hickerson v. Vessels*, 2014 CO 2, ¶ 10.

## B.　　Applicable Law

¶ 11　　"Article III of the Colorado Constitution prevents one branch of government from exercising powers that the constitution makes the exclusive domain of another branch." *Crowe v. Tull*, 126 P.3d 196, 205 (Colo. 2006). However, "[t]he separation-of-powers doctrine 'does not require a complete division of authority among the three branches, [and] the powers exercised by different branches of

government necessarily overlap.'" *Id.* (quoting *Dee Enters. v. Indus. Claim Appeals Off.*, 89 P.3d 430, 433 (Colo. App. 2003)).

¶ 12 Under the separation of powers doctrine, the judiciary cannot command Governors to do anything that lies exclusively within their sound discretion. *See In re Legis. Reapportionment,* 150 Colo. 380, 382, 374 P.2d 66, 67 (1962). As relevant here, the Governor has the exclusive power to grant reprieves, commutations, and pardons after conviction. *People ex rel. Dunbar v. Dist. Ct.*, 180 Colo. 107, 111, 502 P.2d 420, 422 (1972).

¶ 13 But "[t]he Colorado Constitution tasks the judicial branch with construing the meaning of constitutional language," *Lobato v. State*, 2013 CO 30, ¶ 17, and Colorado courts can determine whether the Governor violated a plaintiff's constitutional rights and order the Governor to comply with the Constitution. *See, e.g.*, *Ritchie v. Polis*, 2020 CO 69, ¶ 1 (holding that the Colorado Disaster Emergency Act (CDEA), §§ 24-33.5-701 to -716, C.R.S. 2020, does not authorize the Governor to suspend a constitutional requirement). Similarly, in *Goebel v. Colorado Department of Institutions*, 764 P.2d 785, 800 (Colo. 1988), the Colorado Supreme Court held that the trial-court-ordered implementation of a remedial plan to address the needs of

7

mental health patients under the state's care would not violate the constitutional mandate of separation of powers where "the court would simply be interpreting the [law], determining the requirements of that [law], and directing the defendants to spend the funds appropriated by the legislature in accordance with those requirements." *See also United Presbyterian Ass'n v. Bd. of Cnty. Comm'rs,* 167 Colo. 485, 494, 448 P.2d 967, 971 (1968) (The "judiciary is the final authority in the construction of the constitution and the laws.").

¶ 14   Article II, section 20 of the Colorado Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." This language is identical to the Eighth Amendment of the United States Constitution, and Colorado courts treat their prohibitions as the same. *See People v. Gaskins,* 825 P.2d 30, 31 n.1 (Colo. 1992) (assuming that the cruel and unusual punishment prohibitions in the Colorado and United States Constitutions are the same), *abrogated on other grounds by Wells-Yates v. People,* 2019 CO 90M, ¶ 10 (recognizing that article II, section 20 of the Colorado Constitution is identical to the Eighth Amendment and noting that,

in the context of sentence proportionality challenges, Colorado has "generally embraced the [United States] Supreme Court's approach").

¶ 15    In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the United States Supreme Court established that deliberate indifference to serious medical needs of prisoners is proscribed by the Eighth Amendment. *See also Brown v. Plata*, 563 U.S. 493, 511 (2011) ("A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society."). "If government fails to fulfill this obligation, the courts have a responsibility to remedy the resulting Eighth Amendment violation." *Id.*

¶ 16    A medical need is serious if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity of treatment. *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). Deliberate indifference to serious medical needs is shown when, among other criteria, prison officials have prevented an inmate from receiving recommended treatment. *Id.*; *see also Verdecia v. Adams*, 327 F.3d 1171, 1175-76 (10th Cir. 2003) ("Deliberate indifference requires

that the defendant's conduct is 'in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow,' or that the conduct 'disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights.'" (quoting *Berry v. City of Muskogee*, 900 F.2d 1489, 1496 (10th Cir. 1990))). In class action suits, deliberate indifference to inmates' health needs may be shown "by proving there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." *Ramos*, 639 F.2d at 575.

## C. Analysis

¶ 17 In granting the Governor's motion to dismiss, the trial court ruled that it could not force him to reduce the prison population across CDOC facilities because he holds the exclusive power to grant reprieves, commutations, and pardons after conviction. Similarly, the trial court also held that it could not direct the Governor to release prisoners under the CDEA or section 17-22.5-403(4), C.R.S. 2020 — which allows him to grant parole to certain inmates if "extraordinary mitigating circumstances exist and such inmate's release from institutional custody is compatible with the

10

safety and welfare of society" — because deciding whether to issue executive orders in response to a public health emergency or to grant parole to certain inmates are decisions that lie within his sound discretion. Lastly, the trial court concluded that it could not provide any declarative relief to Plaintiffs because it lacked "the power to declare the Governor's alleged failure to act unconstitutional."

¶ 18    We agree with the trial court that, under the separation of powers doctrine, the judiciary cannot order the Governor to grant reprieves, commutations, or pardons. *See McClure v. Dist. Ct.*, 187 Colo. 359, 361, 532 P.2d 340, 341 (1975). However, we disagree with the trial court's conclusion that it cannot provide declaratory relief without violating the separation of powers doctrine. The judiciary retains jurisdiction to evaluate the constitutionality of executive conduct — including actions taken under the CDEA, *Ritchie*, ¶ 1 — and here, Plaintiffs allege a violation of "a fundamental constitutional right affecting [their] current conditions of confinement." *See, e.g., Richardson v. Hesse*, 823 P.2d 150 (Colo. 1992); *Deason v. Kautzky*, 786 P.2d 420 (Colo. 1990); *see also Powell v. McCormack*, 395 U.S. 486, 489, 514 (1969) (rejecting the

11

defendants' separation of powers argument and holding that federal courts had subject matter jurisdiction to determine whether the House of Representatives violated the United States Constitution by excluding an eligible and duly elected representative from taking his seat).

¶ 19     The Governor maintains that, unlike in *Ritchie* and *Goebel*, he has taken no affirmative action affecting Plaintiffs' conditions of confinement and that the court cannot review the constitutionality of his *inaction* on such discretionary matters.  But the Governor does not have the discretion to violate the Colorado Constitution, and the United States Supreme Court articulated the "deliberate indifference" standard specifically to address the harm of governmental inaction in the face of known or obvious risks to prisoners that are likely to result in a constitutional violation.  *See Brown*, 563 U.S. at 510.  And though Colorado courts have not explicitly recognized the concept of "deliberate indifference" under the state constitution, the identical language of article II, section 20 to the Eighth Amendment justifies recognition of that prohibition. *See Gaskins*, 825 P.2d at 31 n.1.

¶ 20    Further, in addition to having the power to declare a Governor's inaction unconstitutional, the court may order the Governor to remedy a constitutional violation without violating the separation of powers doctrine so long as the Governor retains the discretion to determine what particular remedy to implement.  *See Goebel*, 764 P.2d at 800; *see also Brown*, 563 U.S. at 526 (noting courts retain broad authority "to fashion practical remedies when confronted with complex and intractable constitutional violations"); *Ramos*, 639 F.2d at 586 ("[T]he scope of a district court's equitable powers to remedy constitutional violations is 'broad' . . . ." (quoting *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978))); Jeffrey A. Love & Arpit K. Garg, *Presidential Inaction and the Separation of Powers*, 112 Mich. L. Rev. 1195, 1230 (2014) ("The very premise for judicial review of executive inaction is that the executive has failed to meet the requirements of the Constitution, thereby making it entirely proper for the judiciary to intervene.  Nevertheless, it might still be worrisome for courts to dictate that the executive act in a particular way, especially given the complicated resource and enforcement decisions they might have to interfere with.") (footnote omitted); Merrick B. Garland, *Deregulation and Judicial Review*, 98 Harv. L.

Rev. 505, 564-65 (1985) ("To be sure, because the essence of the executive function is the exercise of discretion, a court transgresses the separation of powers when it dictates that an agency take one particular action instead of others within its discretionary prerogative. Yet when a court merely orders an agency to act, leaving the choice of action to the agency's discretion, no trespass occurs.") (footnote omitted).

¶ 21    Speculation about a possible remedy is premature because no constitutional violation has been found. *Cf. Baker v. Carr*, 369 U.S. 186, 198 (1962) ("[I]t is improper now to consider what remedy would be most appropriate if appellants prevail at the trial."). Thus, *if* the court later finds that the current conditions of confinement in CDOC facilities violate Plaintiffs' constitutional rights, it may direct the Governor to remedy those conditions.[2] Of course, on the present and undeveloped record, we cannot surmise whether Plaintiffs are entitled to any relief. Many material questions of fact remain that preclude a decision on the merits. The trial court

---

[2] The Governor invites us to look at prison vaccination rates to conclude this case is moot. The issue can be raised to the trial court on remand, but it is not properly before this court.

should not have summarily dismissed Plaintiffs' suit. This is hardly the first time a case has been filed before all the essential facts are established. Our court rules contemplate a situation like this where courts need to resolve questions of fact before deciding the merits of a case. *See* C.R.C.P. 16, 56(f), 57. Instead of using these tools and others, the trial court — invoking separation of powers principles — dismissed Plaintiffs' claims without meaningfully scrutinizing whether the government is violating their basic liberties. Conditions of confinement suits are complex civil litigation, often involving considerable expertise by lawyers and experts. Indeed, the federal district court for the District of Colorado explained that one such case, *Ramos v. Lamm*, was "exceedingly complicated," entailed extensive investigation and discovery efforts, and resulted in "volumes of evidence [being] presented by both sides." 539 F. Supp. 730, 743-44, 751 (D. Colo. 1982), *remanded*, 713 F.2d 546 (10th Cir. 1983).

¶ 22 While it is an executive branch function to decide whether, when, and how to exercise emergency powers amidst a public health emergency, an emergency "is not a blank check for the [executive] when it comes to the rights of the Nation's citizens."

15

*Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004). During an emergency, our constitutional system "envisions a role for all three branches when individual liberties are at stake." *Id.* It remains the judicial function to declare unconstitutional that which transgresses the rights of individuals in our state.

¶ 23 And though we agree the judiciary may not order the Governor to pardon or commute any prisoner, we disagree with the Governor that the only relief Plaintiffs seek is prison depopulation. While Plaintiffs' complaint frequently discusses prison depopulation[3] as a desired outcome, other portions of their complaint contemplate more general forms of relief. For example, paragraph 24 of Plaintiffs' amended complaint states that "Medically Vulnerable Prisoners must be prioritized for consideration for population reduction, *and where not feasible, be afforded protective measures and safe housing such that their incarceration does not amount to a*

---

[3] Plaintiffs' use of the term "depopulate" does not necessarily imply that the Governor must use his power to grant reprieves, commutations, and pardons to achieve proper social distancing. Plaintiffs also discuss the need to reduce prison population "density," which suggests they believe the Governor could remedy a constitutional violation by finding alternative placements for inmates outside of traditional prison facilities.

*death sentence.*" (Emphasis added.) Further, their prayer for relief asked the court to issue an injunction requiring the Governor to "[r]educe the prison population across CDOC facilities" *or* "*[t]ake other measures to cure the Constitutional violations.*" (Emphasis added.) Plaintiffs also requested that the court issue "a declaration that Defendant Polis' inaction violates the Colorado Constitution Article II, Section 20." These statements sufficiently requested general forms of relief within the trial court's power to provide. *See Warne*, ¶¶ 1, 9, 24 (a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible").

¶ 24    Accordingly, we conclude that the trial court erred by prematurely dismissing Plaintiffs' request for declaratory or injunctive relief under C.R.C.P. 12(b)(1), *see Ritchie*, ¶ 1; *Goebel*, 764 P.2d at 800; *see also Ramos*, 639 F.2d at 586, and remand for further proceedings consistent with this opinion.

IV.    Mandamus Relief under C.R.C.P. 106(a)(2)

¶ 25    As an alternative to their request for injunctive and declarative relief, Plaintiffs also requested that the court issue a writ of mandamus ordering the Governor to exercise his powers under

17

section 24-33.5-704 "to correct the unconstitutional conditions and fulfill his emergency response duties." C.R.C.P. 106(a)(2) provides that relief may be obtained "[w]here the relief sought is to compel a lower judicial body, governmental body, corporation, board, officer or person to perform an act which the law specially enjoins as a duty resulting from an office, trust, or station." The court will grant mandamus relief when (1) the plaintiff has a clear right to the relief sought; (2) the defendant government agency or official has a clear duty to perform the act requested; and (3) no other adequate remedy is available to the plaintiff. *Rocky Mountain Animal Def. v. Colo. Div. of Wildlife*, 100 P.3d 508, 517 (Colo. App. 2004); *see also Gramiger v. Crowley*, 660 P.2d 1279, 1281 (Colo. 1983) ("[M]andamus will not issue until all forms of alternative relief have been exhausted.").

¶ 26    Because another form of relief may be available to Plaintiffs, we need not decide here whether they could be entitled to mandamus relief under Rule 106(a)(2). *See Robertson v. Westminster Mall Co.*, 43 P.3d 622, 628 (Colo. App. 2001) (asserting that this court does not render advisory opinions in cases based on "speculative, hypothetical, or contingent set[s] of facts").

## V.    Conclusion

¶ 27    The trial court's judgment is reversed, and we remand for further proceedings consistent with this opinion.

JUDGE DUNN and JUDGE GRAHAM concur.