The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 6, 2022

## 2022COA116

**No. 20CA1144, *People v. Snelling* — Crimes — Second Degree Burglary — First Degree Criminal Trespass; Criminal Law — Prosecution of Multiple Counts for Same Act — Lesser Included Offenses**

The majority of a division of the court of appeals determines

that first degree criminal trespass merges into second degree

burglary.  In *People v. Garcia*, 940 P.2d 357 (Colo. 1997), the

supreme court, relying on the *Armintrout v. People*, 864 P.2d 576

(Colo. 1993) merger test, stated that the offenses did not merge

because unlawful entry into a dwelling was not a statutory element

of second degree burglary.  The majority of this division concludes

the supreme court implicitly overruled this conclusion in

subsequent cases by altering the merger test and explicitly stating

that unlawful entry into a dwelling is a statutory element of second

degree burglary.  The majority thus disagrees with the majority in the recent decision of *People v. Whiteaker*, 2022 COA 84, ¶¶ 16-18, __ P.3d__, __, which held that *Garcia* was still controlling because it had not been explicitly overruled by the supreme court.  The majority of the division concludes that the two offenses should merge based on the supreme court's reformulation of the merger test in *Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 51-64, 390 P.3d 816, 824-26, and *People v. Rock*, 2017 CO 84, ¶ 20, 402 P.3d 472, 479, agreeing with Judge Kuhn's concurring opinion in *Whiteaker*.

In a separate opinion, Judge Gomez determines that she would not address the merger issue.

The division also reverses Snelling's convictions for second degree burglary and tampering because the trial court did not answer the jury's question about the effect of voluntary intoxication on those offenses.

The judgment is affirmed in part, reversed in part, and remanded for a new trial.

Court of Appeals No. 20CA1144
Boulder County District Court No. 19CR475
Honorable Bruce Langer, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Reginald Snelling,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE TAUBMAN*
Fox, J., concurs
Gomez, J., specially concurs

Announced October 6, 2022

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Assistant Solicitor
General, Denver, Colorado, for Plaintiff-Appellee

Mark G. Walta, Alternate Defense Counsel, Andrew W. Schulman, Alternate
Defense Counsel, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2022.

¶ 1     Defendant, Reginald Snelling, appeals his convictions for second degree burglary, first degree criminal trespass, and second degree criminal tampering.  He contends that the trial court erred in not providing a supplemental instruction to the jury on the effects of voluntary intoxication, and we agree.

¶ 2     Additionally, Snelling and the People agree that the criminal trespass conviction should have merged into the burglary conviction, and we concur.  In reaching this conclusion, we determine that the supreme court's decision in *People v. Garcia*, 940 P.2d 357 (Colo. 1997), has been implicitly overruled by subsequent supreme court decisions clarifying the doctrine of merger.

¶ 3     Accordingly, we reverse his convictions for second degree burglary and second degree criminal tampering and remand this case for a new trial on those charges.  However, we affirm his trespassing conviction subject to further proceedings on the merger issue, as we discuss below.

I.    Background

¶ 4     In March 2019, Snelling was drinking alcohol and spending the day with his friend, Thomas Rogers, at Rogers's apartment.  Later that evening, some of Rogers's friends — Mark McNellan, Kyle

Danley, and D.B., a seventeen-year-old girl — came to the apartment, along with two girls whom Rogers did not know, J. and P. Everyone present had consumed alcohol, marijuana, or both. Rogers testified that he did not know that the girls were minors, and no evidence was presented that Snelling knew the girls' ages.

¶ 5 At one point, Snelling began behaving inappropriately toward J. and P.; D.B. pushed Snelling, and she, Rogers, and McNellan told Snelling to leave the apartment. Snelling left, but he returned to the apartment shortly afterward and knocked on the door, saying that he had lost his keys and cell phone. Danley cracked open the door, and Snelling and Rogers talked through the opening. Rogers said that he would look for Snelling's keys and phone, but that Snelling could not come inside because the guests did not feel safe with him present.

¶ 6 Rogers looked for the phone and keys for several minutes but could not find them. When Rogers told Snelling so, and refused to let him into the apartment, Snelling became increasingly agitated, began yelling at the people in the apartment, and tried to force his way inside. Danley, D.B., and McNellan scuffled with Snelling while trying to keep him out, and Rogers returned to his bedroom. As

2

Snelling tried to force his way in, he yelled, "I'm going to get that boy" and "I'm going to mess up you boys," and he struck D.B. during the scuffle. Rogers called 911 and reported that Snelling was breaking into his apartment. Eventually, Danley pushed Snelling out of the apartment and into the common area outside.

¶ 7 The police arrived shortly thereafter. After the police interviewed witnesses, they arrested Snelling and placed him in the back of a patrol vehicle.

¶ 8 While the officers transported Snelling to the jail, he alternated between calmness and screaming; he also spit on a window and on the partition between the officers and himself.

¶ 9 The prosecution charged Snelling with second degree burglary and first degree criminal trespass for breaking into the apartment, harassment for striking D.B., and second degree criminal tampering for spitting in the patrol car.

¶ 10 Snelling took his case to a jury trial and was acquitted of harassment but convicted of second degree burglary, first degree criminal trespass, and second degree criminal tampering. He was sentenced to concurrent sentences of two years of probation and eighty-eight days in jail. This appeal followed.

3

## II.    Jury Instruction

¶ 11    Snelling argues that the court erroneously declined to answer the jury's question on the legal effect of voluntary intoxication as it pertains to his two specific intent charges — second degree burglary and second degree criminal tampering.  The People concede that the trial court erred but maintain that the error was harmless.  We agree that the trial court erred but conclude that the error was reversible.[1]

### A.    Additional Facts

¶ 12    Snelling endorsed voluntary intoxication as a defense before trial, and the evidence presented at trial suggested Snelling was intoxicated during the incident.  However, he did not request a voluntary intoxication instruction.

¶ 13    After the jury began deliberations, it asked the court, "Can you be so inebriated that you are unable to form intent?"  The prosecution argued that the defense had not tendered an intoxication defense instruction, so the court could not answer the

---

[1] Snelling also contends that the court plainly erred by not providing the jury with a modified unanimity instruction.  Because we reverse due to the error in response to the jury's question, we need not consider that contention.

question. Defense counsel argued that because voluntary intoxication is a defense to specific intent crimes, the court should instruct the jury that voluntary intoxication could negate the mens rea requirements of burglary and tampering. The court responded by telling the jurors that they "must consider the instructions as given."

## B. Standard of Review and Law

¶ 14 When the jury indicates that it does not understand a matter central to the guilt or innocence of the accused — such as the ability to form specific intent — the trial court must clarify the matter for the jury. *Leonardo v. People*, 728 P.2d 1252, 1256 (Colo. 1986). Additionally, "[w]here the evidence supports an intoxication defense, it is appropriate for a trial court to instruct on that defense." *Brown v. People*, 239 P.3d 764, 769 (Colo. 2010) (quoting *People v. Mattas*, 645 P.2d 254, 259 (Colo. 1982)). Voluntary intoxication may negate specific intent, and both burglary and tampering are specific intent crimes. *See* § 18-1-804(1), C.R.S. 2021; *Palmer v. People*, 964 P.2d 524, 526 (Colo. 1998) ("[A]ll offenses in the criminal code in which the mental culpability requirement is expressed as 'intentionally' or 'with intent' are

5

specific intent offenses."); § 18-4-203(1), C.R.S. 2021 (a second degree burglary conviction requires a finding that the defendant acted "with intent to commit therein a crime against another person or property"); § 18-4-506, C.R.S. 2021 (tampering requires an offender to act "with intent to cause injury, inconvenience, or annoyance to that person or to another").

¶ 15    A trial court's not providing "a jury instruction after a defendant requests such instruction will be reviewed under the harmless error standard." *Brown*, 239 P.3d at 767.  Under this standard, reversal is warranted only if the error affected the defendant's substantial rights; otherwise, it must be disregarded as harmless unless there is a reasonable probability that the error contributed to the defendant's conviction.  *Id.*

## C.    Analysis

¶ 16    There is no dispute that the trial evidence could support a jury finding that Snelling was intoxicated at the time of the burglary and tampering.  There is also no dispute that the jury was confused about the application of voluntary intoxication as a defense in this case.  Further, there is no dispute that the trial court did not provide a voluntary intoxication instruction at trial in response to

6

the jury's question.  Settled law makes two things clear: (1) voluntary intoxication could have negated Snelling's ability to form specific intent regarding the burglary and tampering offenses; and (2) the trial court had an obligation to clarify the voluntary intoxication issue for the jury.  *See* § 18-1-804(1); *Leonardo*, 728 P.2d at 1256.  Thus, we conclude — and both parties agree — that the trial court erred when it did not give the jurors a voluntary intoxication explanation in answer to their question.  *See Brown*, 239 P.3d at 769.

¶ 17    Regarding Snelling's trespassing charge, we conclude the error was harmless because trespassing is not a specific intent crime. *See* § 18-4-502(1)(a), C.R.S. 2021.  However, we further conclude the error was not harmless in connection with Snelling's burglary and tampering charges because a reasonable probability exists that the error contributed to his convictions, and we find *Leonardo* instructive.

¶ 18    In that case, after the jury began deliberations, it sent a note to the court asking, "Is Knowing or Believing in instruction Number 6 The Same as Having a Suspicion of?"  *Leonardo*, 728 P.2d at 1254.  The court, without consulting counsel for either side or

7

informing the defendant, responded, "Ladies and Gentlemen: You must reach your verdict applying the words as you find them in the instructions." *Id.* The jury made no further inquiries and returned guilty verdicts shortly afterward. *Id.* The defendant appealed based on the court's handling of the jury question, and a division of this court upheld his convictions because it found the original instructions were adequate. *Id.* The supreme court reversed, holding that the central issue was not the adequacy of the instructions, but the jury's demonstrated misunderstanding of them. *Id.* at 1255. The supreme court explained that when a jury affirmatively indicates that it has a fundamental misunderstanding of an instruction, the basis for presuming that the jury understood and heeded the instruction disappears. *Id.*

¶ 19    Here, when the jury asked the trial court about the role of voluntary intoxication, it "demonstrate[d] that the jury had considered the relevant instruction" but did not know if its concern was encompassed in that instruction. *Id.* Therefore, "[r]eferring the jury back to the same instruction that created the doubt in their minds could serve no useful purpose." *Id.* The trial court had an obligation to clarify the matter for the jury in a concrete and

8

unambiguous manner and could have done so directly and concisely. *Id.* at 1256. In sum, because the jury's confusion related to a central element of the crimes, the court committed prejudicial error by not answering the jury's question.

¶ 20 The People urge us to conclude that the error was harmless because "the court's response referring the jury back to the original instructions did not preclude the jury from considering Snelling's intoxication as to the burglary and tampering counts." Their argument fails for three reasons.

¶ 21 First, contrary to the People's assertion, the original instructions precluded the jury from considering Snelling's intoxication. The instructions told jurors that it was the court's job "to decide what rules of law apply to the case" and jurors had to follow the instructions given by the court even if they "disagree[d] with or [did] not understand the reasons" for them. Further, jurors could not conduct any external research using any source to decide the case. Thus, jurors were explicitly precluded from considering any interpretation of the law not provided by the trial court. Notably absent from the instructions was any mention of how to apply voluntary intoxication to specific intent crimes.

¶ 22    Second, absent evidence to the contrary, we presume that jurors follow a court's instructions.  *See Galvan v. People*, 2020 CO 82, ¶ 29, 476 P.3d 746, 755.  Therefore, since the jurors could not receive legal guidance about or conduct legal research on voluntary intoxication — and were explicitly told not to deviate from the court's instructions — the jurors were not only precluded from considering Snelling's intoxication, but they also had no idea how to do so.  Moreover, nothing in the record suggests that they tried to deviate from the court's instructions, so we presume that they did not.

¶ 23    Finally, the trial court was required to respond to the jury's question even though Snelling did not request a jury instruction on the effect of voluntary intoxication, as we previously noted.  *See Leonardo*, 728 P.2d at 1256; *Brown*, 239 P.3d at 769.

¶ 24    Accordingly, we reverse Snelling's convictions for burglary and tampering and remand for a new trial.

### III.    Evidentiary Issues

¶ 25    Although we have reversed his burglary and tampering convictions, Snelling makes two evidentiary contentions that apply to his trespassing conviction, so we address them.  First, he

contends that the trial court erroneously allowed the jury to hear an inadmissible portion of a 911 call, and the resulting prejudice to his defense requires reversal. Second, he asserts that the admission of certain statements and evidence by the prosecutor allowed the jury to convict him for improper reasons — namely, the historical biases associated with policing the sexual behavior of Black men toward white women. We are unpersuaded by either contention.

## A. Additional Facts

¶ 26 Snelling filed two motions in limine before trial. One motion requested that the court preclude references to Snelling's sexual behavior before he was asked to leave the apartment, stating that "evidence of inappropriate sexual behavior is clearly unfairly prejudicial to Mr. Snelling in this 'me too' era." The other requested that the court preclude the introduction of evidence that Snelling yelled at police officers, commented on his distrust of white people, and insulted the officers; it claimed that evidence of Snelling's "angry and arguably racist behavior" was irrelevant to the crimes charged and unfairly prejudicial. The prosecutor made an oral motion in limine requesting that Snelling not be allowed to argue

11

that the apartment's occupants wanted him to leave because they were racist.

¶ 27 The trial court ruled that Snelling's behavior toward J. and P. could be described as inappropriate and harassing, but not sexual, and that neither party could discuss race. At trial, Snelling made various objections to the prosecutor's evidence and statements — on grounds of hearsay, relevance, bolstering, and violations of the court's orders regarding sexual conduct — some of which were sustained and some overruled. Neither Snelling's motions in limine nor his objections during trial were based on the prejudicial effects of any racial stereotypes or tropes.

¶ 28 Additionally, the prosecution entered a three-minute, fourteen-second 911 call into evidence. At three minutes and thirteen seconds, defense counsel objected on grounds of double hearsay and requested that if a copy of the call went back to the jury, that copy should not include "the currently excised section." The court overruled the objection, finding that what was said did not violate its rulings. The record reveals that the statement at issue was: "He was jumping onto one of my friends. She was a female and he was drunk." Regarding that statement, the following colloquy occurred:

12

DEFENSE COUNSEL: Your Honor, we do have an issue with respect to the 911 call the People are seeking to give the Court a copy of. As the Court may remember, I objected in the middle of the call and I believe the call goes "at that point he was jumping," and I objected at that point and then there was an attempt to stop it.

THE COURT: Right.

DEFENSE COUNSEL: What it goes on to say and what -- the version that the People have accessed, how it finishes is, "He was jumping onto one of my friends. She was a female and he was drunk." And it's my position that this gets into the sexual misconduct issue that we were talking about, so it needs to be stopped before that particular passage.

THE COURT: [Prosecutors?]

PROSECUTOR: Yes, Your Honor. We clipped it from minute mark zero to minute mark three minutes [thirteen] seconds as we discussed at the bench. That entire portion has already been admitted and published. There was a [real-time] objection raised to jumping on this female. The Court overruled that and then we proceeded, and we ceased at three minutes, [thirteen] seconds. We already decided this issue. We do have it presently. We can play it again, but it's our position that there was a simultaneous objection. It was overruled and we clipped it to three minutes, [thirteen] seconds as I reflected to the Court when we stopped playing it.

THE COURT: I don't remember hearing

13

anything past "jumping on." Did we play it past that point?

PROSECUTOR: Yes.

DEFENSE COUNSEL: And, Your Honor, my recollection is that while we were -- as the objection was going, there was an attempt to pause it.

THE COURT: Right.

DEFENSE COUNSEL: So, in essence, what the Court would be doing would be allowing the prosecution to introduce this evidence that violates Mr. Snelling's due process rights, violates [CRE] 403 because of an inability to pause in a timely fashion. I don't think that's appropriate.

THE COURT: Okay. So when I overruled that objection, I hadn't heard and wasn't aware that it went on to say after the words "jumping on" my friend and she was female. I think that that does -- certainly could produce an inference in the jurors' minds that it is of a sexual nature, so I am going to ask that it be clipped.

PROSECUTION: Can the court just listen? Does the court mind listening to it briefly?

THE COURT: Sure. I'm going to order that it be clipped after "he was jumping on a friend of mine." That's what I thought I was doing at the time that I ruled. I agree with [defense counsel] that I think she was female and he was drunk certainly can create the impression

14

that it was sexual misconduct which I already ruled is not admissible.

### B.     Standard of Review and Law

¶ 29    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  CRE 401.

¶ 30    Even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  CRE 403.  But the rule "strongly favors the admission of evidence."  *Masters v. People*, 58 P.3d 979, 1001 (Colo. 2002) (quoting *People v. Dist. Ct.*, 869 P.2d 1281, 1286 (Colo. 1994)).  Trial courts "are given broad discretion in balancing the probative value of the evidence against the danger of unfair prejudice."  *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995) (citing *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993)).

¶ 31    A court errs in an evidentiary ruling if it abuses its discretion — when its decision is manifestly arbitrary, unreasonable, or unfair or is based on an erroneous understanding or application of the

law. *People v. McFee*, 2016 COA 97, ¶ 17, 412 P.3d 848, 855; *People v. Clark*, 2015 COA 44, ¶ 14, 370 P.3d 197, 204.

¶ 32    "The standard of reversal for preserved evidentiary claims is harmless error." *People v. Daley*, 2021 COA 85, ¶ 95, 496 P.3d 458, 473.  An error is harmless if there is no reasonable possibility that it contributed to the conviction.  *Pernell v. People*, 2018 CO 13, ¶ 22, 411 P.3d 669, 673.  Under this standard, we will not reverse unless the error "substantially influenced the verdict or affected the fairness of the trial proceedings."  *Hagos v. People*, 2012 CO 63, ¶ 12, 288 P.3d 116, 119 (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

¶ 33    We review unpreserved evidentiary claims for plain error. *People v. Lovato*, 2014 COA 113, ¶ 58, 357 P.3d 212, 226.  Under the plain error standard, even assuming the court erred, we reverse only if the error was obvious, substantial, and "so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Rector*, 248 P.3d 1196, 1203 (Colo. 2011).

¶ 34    Defense counsel contemporaneously objected to the 911 call, so we review that claim for harmless error.  However, we conclude

that the claim regarding the prosecutor's statements was not preserved because the argument Snelling raises on appeal — that evidence of his sexual behavior toward two girls was prejudicial because it played on the racial trope of a Black man sexually harassing white women — differs from the objections defense counsel made at trial — among many others, that evidence of Snelling's inappropriate sexual behavior was "unfairly prejudicial . . . in [the] 'me too' era." *See People v. Tallent*, 2021 CO 68, ¶ 12, 495 P.3d 944, 948 ("When a party presents a new argument or alters the grounds for an objection on appeal, the issue is forfeited and reviewable only for plain error."). Accordingly, we review that contention for plain error.

## C. Analysis

¶ 35    Snelling contends that reversible error occurred because the jury heard one second of the 911 audio — "She was a female and he was drunk" — that was inadmissible because it referenced his alleged sexual behavior in violation of the court's order, and that the audio preyed on racist tropes involving predatory sexual behavior between Black men and white women. He also contends that reversible error occurred because the prosecutor repeatedly

introduced evidence that played on the aforementioned racial trope and repeatedly referred to J.'s and P.'s status as minors.

¶ 36     We decline to discuss his contentions regarding J.'s and P.'s minor status because defense counsel invited any error; jurors first learned that J. and P. were under eighteen during defense counsel's cross-examination of the apartment owner.  *See Montoya v. People*, 2017 CO 40, ¶ 33, 394 P.3d 676, 689 (a party may not complain on appeal of an error that he or she has invited or injected into the case).  Regarding Snelling's racial trope argument, at its heart are two faulty assumptions — each belied by the record, the verdict, or both — that we must address before analyzing his claims.

¶ 37     First, his argument assumes that the jurors knew that J. and P. were white.  But the trial court explicitly banned the mention of race in the trial at the behest of both parties, and nothing in the record reveals the race of J. or P.  Neither girl testified at trial, and there is no record of photographs or videos of the girls being introduced at trial.  The jurors heard the girls' first names during testimony but could not have drawn any conclusions about their race from that information.  Therefore, neither the jurors, nor this court, could know whether J. and P. are white.  Without that

information, Snelling's assertion that the jurors punished him for his sexual behavior toward white women is not supported by the record.

¶ 38     Second, Snelling's argument assumes that the jurors were biased based on the girls' race and acted on that bias. However, Snelling was convicted of all his charges except harassment, the only charge claiming that he physically touched a white girl, D.B. D.B. testified in front of the jurors, and they could see that her race and Snelling's differed. Thus, if the jurors intended to punish him based on racist tropes, they would have done so there; the acquittal is telling. *See Daley*, ¶ 97, 496 P.3d at 474 (a split verdict demonstrates that jury was not substantially influenced by improper testimony). In short, the record does not support the assumptions inherent in Snelling's racial trope assertions, and under the applicable standards of review, his arguments are unavailing.

### 1.     911 Call

¶ 39     The record is not clear on whether the jury heard the contested portion of the 911 call audio over defense counsel's contemporaneous objection. In fact, the trial court itself did not

hear the complete audio for that very reason. However, even if we assume that the jurors heard it, any error was harmless; the jury's split verdict indicates that the audio did not substantially influence the verdict or affect the fairness of the trial. *See People v. Reed*, 2013 COA 113, ¶ 43, 338 P.3d 364, 372; *see also Daley*, ¶ 97, 496 P.3d at 474. Snelling's acquittal on the only charge alleging that he had physical contact with a white female, D.B., indicates that the jury rejected any possible insinuations based on racial tropes, and shows "that the jurors heeded the court's instruction not to allow bias or prejudice to influence their decisions." *People v. Robinson*, 2019 CO 102, ¶ 33, 459 P.3d 229, 235. Moreover, Snelling did not request a curative instruction regarding the 911 call, and the court was not obligated to issue a curative instruction sua sponte. *See People v. Mersman*, 148 P.3d 199, 204 (Colo. App. 2006).

¶ 40 Snelling argues — contradicting established case law — that the split verdict indicates that the jury likely convicted based on improper information because his burglary was predicated on intent to harass someone, and the improper evidence implied that J. and P. were the likely targets of the alleged harassment. However, the record belies that assertion as well. Instead, it shows that the

20

harassment underlying the burglary was based on Snelling's intent to fight someone in the apartment.

¶ 41 The jury instructions said that Snelling could only be guilty of burglary if jurors found that he had the intent to commit the crime of harassment at the time of entry. The jury's harassment instructions stated that harassment occurs when the defendant strikes, shoves, kicks, or subjects a person to physical contact with the intent to harass, annoy, or alarm another person. In its opening statement, the prosecution told jurors that when Snelling was trying to force his way into the apartment, he said, "I'm going to beat your ass" to someone inside of the apartment, and it supported that assertion through witness testimony. In its closing argument, the prosecution told jurors that as Snelling forced his way into the apartment, the owner called the police because he was afraid Snelling would try to hurt him. Nothing in the record indicated that Snelling was trying to force his way back into the apartment with the intent to harass, sexually or otherwise, J. and P. Instead, all the evidence showed that the harassment underlying the burglary charge was based on Snelling's intent to strike someone in the apartment. We presume that juries follow a court's instructions

absent evidence to the contrary. *See Galvan,* ¶ 29, 476 P.3d at 755. We have no reason to doubt the jurors here.

¶ 42 Accordingly, we discern no error or cause for reversal.

2. Prosecutorial Statements and Evidence Regarding J. and P.

¶ 43 We review the prosecutor's statements and evidence elicited about J. and P. for plain error. As with the 911 call, Snelling asserts the court erred because the prosecutor elicited testimony that was irrelevant and played into prejudicial racial stereotypes about sexual behavior between Black men and white women. He alleges prosecutorial misconduct for the same reasons. *See People v. Rodriguez,* 2021 COA 38M, ¶ 31, 491 P.3d 547, 553 (a prosecutor can commit misconduct by eliciting prejudicial evidence that is irrelevant to the charged offenses). Snelling claims that the prejudicial effect of the language was cumulative, rather than based on any individual statement. As examples, Snelling refers us to a witness's testimony that he was "flirting" with a girl before he was asked to leave, and the prosecution's multiple uses of the terms "uncomfortable," "inappropriate," and "freaked out" in reference to Snelling's interactions with J. and P., rather than "harassing."

22

¶ 44     We are unpersuaded for several reasons. First, as mentioned, J. and P.'s race was never introduced at trial. Because nothing in the record showed that the girls are white, Snelling's assertion that jurors punished him because he was a Black man being sexually aggressive toward white women is unsupported.

¶ 45     Second, even in the context of this case, the language that the prosecution used was not sexually charged, implicitly or otherwise. The trial court explicitly stated that the prosecution could introduce evidence of Snelling's actions — making people uncomfortable, bumping into them, or being in their personal space — so long as it did not portray the acts as sexual misconduct. As the trial court noted, a person can make other people uncomfortable without the discomfort being based on sex. Moreover, none of the crimes of which Snelling was convicted revolved around sexual behavior, and again, none of the evidence suggested that Snelling committed burglary with the intent to sexually harass J. and P.

¶ 46     Finally, Snelling's making the girls uncomfortable was relevant because it was the reason that his invitation was revoked, and a predicate to establishing why the burglary occurred. It provided

context to the jurors and thus was relevant and not inappropriate. *See* CRE 401, 402.

¶ 47 Accordingly, we discern no evidentiary error here, plain or otherwise. For the same reasons, we also reject his claims of prosecutorial misconduct.

## IV. Merger

¶ 48 Snelling contends and the People concede that his first degree trespassing and second degree burglary convictions should merge. Though we have reversed Snelling's burglary and tampering charges, we also address his merger claim because it will necessarily arise on remand for two reasons. First, the prosecutor must decide whether to retry Snelling on the burglary charge, leaving the trespass conviction in place if there is no retrial. *See* § 18-1-408(1)(a), C.R.S. 2021 (a defendant may be prosecuted for, though not convicted of, multiple offenses if one is included in the other); *Reyna-Abarca v. People*, 2017 CO 15, ¶ 51, 390 P.3d 816, 824 (same). Second, if the prosecutor charges Snelling with burglary again and he is again convicted of that offense, the trial court will need to determine whether the trespassing and burglary convictions would merge. Currently, the trial court would be bound

by *People v. Whiteaker*, 2022 COA 84, ¶¶ 16-18, ___ P.3d ___, ___, in which the majority recently held that second degree burglary and first degree trespass do not merge. Therefore, the trial court would be required to conclude that the burglary and trespassing convictions do not merge. However, because we disagree with the majority's decision in *Whiteaker*, the trial court would be required to follow our decision and conclude that convictions for second degree burglary and first degree trespass must merge.[2] Further, addressing the merger issue now makes sense, given the People's concession that those two offenses must merge.

¶ 49 We agree with the parties that because first degree criminal trespass is a lesser included offense of second degree burglary, those convictions must merge.[3] However, neither the jury instruction issue nor the evidentiary issues require reversing the

---

[2] One division of this court is not bound by the decision of another division, and under the mandate rule, our conclusions become the law of the case which must be followed on remand. *See People v. Smoots*, 2013 COA 152, ¶ 20, 395 P.3d 53, 57, *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15, 390 P.3d 816; *Super Valu Stores, Inc. v. District Court in and For Weld County*, 906 P.2d 72, 79 (Colo. 1995).

[3] We rely on our own interpretation of the law and are not bound by the concessions of the parties. *People v. Backus*, 952 P.2d 846, 850 (Colo. App. 1998).

trespassing conviction. Accordingly, we affirm the trespass conviction subject to further proceedings on remand.

### A. Standard of Review and Law

¶ 50 We review de novo whether merger applies to criminal offenses. *People v. Zweygardt*, 2012 COA 119, ¶ 40, 298 P.3d 1018, 1026. A defendant may not be punished twice for the same offense. *Id.* at ¶ 39, 298 P.3d at 1026; *see* U.S. Const. amend. V; Colo. Const. art. II, § 18. Accordingly, a defendant may not be convicted of two offenses based on the same conduct if one offense is a lesser included offense of the other. *Page v. People*, 2017 CO 88, ¶ 9, 402 P.3d 468, 470. If a defendant is found guilty of a greater offense and a lesser included offense, the trial court must merge the lesser included offense into the greater. *Id.*

¶ 51 Under section 18-1-408(5)(a), an offense is a lesser included offense of an offense charged if it "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." The supreme court has clarified that an "offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements

that are also included in the elements of the greater offense." *Reyna-Abarca*, ¶¶ 51-64, 390 P.3d at 824-26. Thus, "one offense is not a lesser included offense of another if the lesser offense requires an element not required for the greater offense." *Id.* at ¶ 60, 390 P.3d at 826 (citing *Schmuck v. United States*, 489 U.S. 705, 716 (1989)). Additionally, the supreme court has held that second degree criminal trespass is a lesser included offense of second degree burglary because its elements — including unlawfully entering the premises of another — are "a subset of the statutory elements of second degree burglary." *People v. Rock*, 2017 CO 84, ¶ 20, 402 P.3d 472, 479.

¶ 52    As relevant here, a person commits second degree burglary if "the person knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property." § 18-4-203(1). A person commits first degree criminal trespass if the person "[k]nowingly and unlawfully enters or remains in a dwelling of another." § 18-4-502(1)(a).

## B. Analysis

¶ 53　As noted, Snelling was convicted of second degree burglary and first degree criminal trespass for the single act of entering the apartment. The supreme court first addressed whether these offenses should merge in *Garcia*, 940 P.2d 357, but the court has since altered both its method for evaluating merger and how it views the elements of these two offenses.

¶ 54　In *Garcia*, the supreme court, relying on its earlier interpretation of the strict elements test, *see Armintrout v. People*, 864 P.2d 576, 579-80 (Colo. 1993), held that first degree criminal trespass was not a lesser included offense of second degree burglary because the "dwelling" factor in second degree burglary was a sentence enhancer, rather than an element of the offense, and thus not considered for the purposes of merger. 940 P.2d at 363. We note that in *Whiteaker*, a division of this court held that *Garcia* is still applicable because it has not been expressly overruled by the supreme court. *See Whiteaker*, ¶¶ 3-4, ___ P.3d at ___. Nevertheless, Judge Kuhn, in a thorough special concurrence, said that in his view, *Garcia* was no longer applicable based on the supreme court's modification of the test for merger, as set forth in

28

*Reyna-Abarca* and *Rock*. *Id.* at ¶ 49, ___ P.3d at ___ (Kuhn, J.,
specially concurring).

¶ 55     We agree with Judge Kuhn for two reasons. First, we agree
with his analysis that *Reyna-Abarca* is the controlling standard for
evaluating lesser included crimes. Second, we conclude that *Garcia*
has been implicitly overruled based on *Reyna-Abarca, Rock,* and the
decision of another division of this court — *People v. Gillis*, 2020
COA 68, ¶ 34, 471 P.3d 1197, 1204. *Cf. West v. People*, 2015 CO 5,
¶ 29, 341 P.3d 520, 528 (concluding that a supreme court opinion
implicitly overruled an earlier opinion, making the current case's
overruling explicit); *Elrick v. Merrill,* 10 P.3d 689, 698 (Colo. App.
2000) (concluding that the supreme court implicitly overruled a
previous decision regarding attorney fees in light of more current
cases); *People v. Hasadinratana*, 2021 COA 66, ¶ 3, 493 P.3d 925,
926 (holding that the supreme court implicitly overruled a previous
court of appeals opinion); *People v. Hoang*, 13 P.3d 819, 821 (Colo.
App. 2000) (same).

¶ 56     Additionally, our case is distinguishable from *Whiteaker*.
There, Judge Kuhn concluded that no plain error had occurred
because there was no controlling published opinion supporting his

29

view. *Whiteaker*, ¶ 62, ___ P.3d at ___ (Kuhn, J., specially concurring). In contrast, here the People concede that the trial court plainly erred under *Reyna-Abarca, Rock,* and *Gillis.* Furthermore, *Whiteaker* did not address *Gillis.*

¶ 57    Judge Kuhn noted that one crucial distinction between *Rock* and *Garcia* is their different applications of the controlling elements test; *Garcia* relied on the *Armintrout* strict elements test, which was replaced by the clarified elements test in *Reyna-Abarca* that governed *Rock.* *Whiteaker*, ¶ 55, ___ P.3d at ___ (Kuhn, J., specially concurring); *see also Armintrout*, 864 P.2d at 579-81. Further, he noted that the supreme court's recent language indicates that *Reyna-Abarca* is the current controlling standard, and its application may yield different results from *Armintrout.* *Whiteaker*, ¶¶ 56-58, ___ P.3d at ___ (Kuhn, J., specially concurring); *see also Page*, ¶ 9, 402 P.3d at 470 ("We apply *Reyna-Abarca*'s statutory elements test to determine whether an offense is a lesser included offense of another."). Comparing *Garcia*'s and *Rock*'s respective interpretations of the elements of second degree burglary supports his conclusion and ours. As we previously noted, under the *Armintrout* test in *Garcia,* the supreme court determined that

unlawfully entering a dwelling was a sentence enhancer, rather than a statutory element of second degree burglary. 940 P.2d at 363. However, under the *Reyna-Abarca* test as applied in *Rock*, the supreme court explicitly stated that unlawfully entering the dwelling of another is "a subset of the *statutory elements* of second degree burglary," not merely a sentence enhancer. *Rock*, ¶ 20, 402 P.3d at 479 (emphasis added).

¶ 58    The *Gillis* division — considering whether first degree criminal trespass should merge into first degree burglary — reached a conclusion similar to ours and that of Judge Kuhn. It noted that "[t]he Colorado Supreme Court specified the test for determining whether an offense is a lesser included offense in *Reyna-Abarca* and clarified the relationship between criminal trespass and burglary in *Rock*." *Gillis*, ¶ 34, 471 P.3d at 1204; *see also Reyna-Abarca*, ¶ 59, 390 P.3d at 825-26 (stating that "prior articulations of the strict elements test have not provided . . . clear and consistent guidance," requiring the adoption of a new standard for determining lesser included offenses); *Rock*, ¶ 20, 402 P.3d at 479 (second degree criminal trespass is a lesser included offense of second degree burglary). The division concluded that similar to "the second degree

31

criminal trespass offense discussed in *Rock*, the elements of first degree criminal trespass are knowingly and unlawfully entering or remaining in the dwelling of another." *Gillis*, ¶ 37, 471 P.3d at 1205. Thus, it concluded that first degree trespass is a lesser included offense of first degree burglary, and the two offenses should merge. *Id.*

¶ 59 Because second degree trespass merges into second degree burglary and first degree trespass merges into first degree burglary — based on a defendant's unlawful entry into a dwelling — it logically follows that, under the *Reyna-Abarca* test, first degree trespass should merge into second degree burglary. *See Rock*, ¶ 20, 402 P.3d at 479; *Gillis*, ¶¶ 33-37, 471 P.3d at 1204-05. Both first degree criminal trespass and second degree burglary are committed by knowingly and unlawfully entering a dwelling; second degree burglary differs only because it requires the intent to commit a crime upon entry. *See* §§ 18-4-203(1), 18-4-502(1)(a). Thus, we follow and extend *Reyna-Abarca*, *Rock*, and *Gillis* to their logical conclusions, and hold that first degree criminal trespass should merge into second degree burglary. *See Reyna-Abarca*, ¶¶ 51-64,

390 P.3d at 824-26; *Rock*, ¶ 20, 402 P.3d at 479; *Gillis*, ¶¶ 33-37, 471 P.3d at 1204-05.

¶ 60 Accordingly, we conclude that if Snelling is retried and again convicted of burglary, his trespass conviction should merge into his burglary conviction.

## V.  Conclusion

¶ 61 Snelling's convictions for second degree burglary and criminal tampering are reversed and remanded for a new trial.  His trespassing conviction is affirmed subject to merger if he is again tried and convicted of second degree burglary.

JUDGE FOX concurs.

JUDGE GOMEZ specially concurs.

JUDGE GOMEZ, specially concurring.

¶ 62    I agree with my colleagues on the instructional and evidentiary issues presented in this appeal and, therefore, join Parts II and III of the opinion.  But I part ways with respect to Part IV because I don't believe we should reach the issue of merger.

¶ 63    When divisions of this court decide an issue that requires a reversal and remand, we typically reach additional issues only to the extent that they are likely to arise again on remand.  *See, e.g.*, *Herrera v. Lerma*, 2018 COA 141, ¶ 12 (addressing issues concerning the exclusion of evidence and limitations on voir dire, as they "will likely arise on remand in the event of retrial"); *People v. Becker*, 2014 COA 36, ¶ 29 (declining to address issues that "involve facts specific to how the trial unfolded," as "we cannot predict that those facts will occur again or are even likely to occur again"); *People v. Harmon*, 284 P.3d 124, 129-31 (Colo. App. 2011) (reaching an issue concerning limitations on opening argument that "is likely to arise again on remand," while declining to reach an issue involving a potential waiver at trial that "we cannot say . . . is likely to arise again on remand").  *See generally People v. Stewart*, 2017 COA 99, ¶ 64 (J. Jones, J., concurring in part and dissenting

in part) ("[O]ur common practice is to address contentions that pertain to issues likely to arise on remand.").

¶ 64    The decision of what additional issues to reach in a particular case involves competing considerations of judicial efficiency, *see People v. Buckner*, 2022 COA 14, ¶ 56, and judicial restraint, including avoiding the issuance of advisory opinions, *see Becker*, ¶ 29; *see also Winston v. Polis*, 2021 COA 90, ¶ 26 ("[T]his court does not render advisory opinions in cases based on 'speculative, hypothetical, or contingent set[s] of facts.'" (quoting *Robertson v. Westminster Mall Co.*, 43 P.3d 622, 628 (Colo. App. 2001)).

¶ 65    In this case, I think restraint is warranted. We are reversing one of the two convictions that would potentially have to merge — second degree burglary — and I think it is speculative to assume that Snelling is likely to be retried, much less reconvicted of, that same offense on remand.

¶ 66    Thus, I don't believe we can say that the issue of merger is likely to arise on remand. The majority concludes that it is because (1) the prosecutor must decide whether to retry Snelling on the burglary charge; and (2) if Snelling is again tried and convicted of burglary, then the trial court will need to determine whether that

conviction must merge with the earlier trespassing conviction. I'm not persuaded. As to the prosecutor's decision on what charges, if any, to pursue on remand, a prosecutor may choose to prosecute a defendant for multiple offenses, even if the defendant cannot be convicted of more than one of the offenses due to issues such as merger. *See* § 18-1-408(1), C.R.S. 2021; *Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 41, 51. And, as to the trial court's need to resolve the issue of merger in the event of Snelling's retrial and reconviction, I don't believe we can say at this point that the prosecutor will likely try Snelling again for burglary and that a jury will likely convict Snelling again of that offense.

¶ 67    Indeed, counsel for both sides agreed at oral argument that if we were to reverse the burglary conviction due to the instructional error — as we are doing — then the issue of merger would be moot and wouldn't need to be resolved in this appeal.

¶ 68    For these reasons, I wouldn't reach the issue of merger.